# EASTON ETC. PASS. RY. CO. v. CITY OF EASTON.

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS
OF NORTHAMPTON COUNTY.

Argued March 12, 1890—Decided March 24, 1890.

[To be reported.]

1. A railway track, laid upon a city street in good faith, under a corporate charter granted for the purpose, but not endangering the health or safety of the inhabitants, cannot be classed among the nuisances which the city authorities may abate summarily without resort to the processes of the law, even though, by reason of the manner of its construction, it may obstruct the street to such a degree as to amount to a nuisance.

2. When the authorities of a city have declared such a track to be in violation of a municipal ordinance and a public nuisance, and have summarily undertaken to remove it by force, and the railway company prays for an injunction against such removal, the city not applying, by cross bill or otherwise, for a legal adjustment of the differences between the company and itself, the injunction will be granted without regard to the merits of the controversy.

3. A street-railway company, chartered by a special act which is silent as to the style of rail to be used for its track, is not confined thereby to the kind of rail in use when the charter was granted, but, after adopting the flat rail, then the only one used for such tracks, and continuing to use the same for twenty years, it may substitute a T rail, so laid as not to create a greater obstruction to the use of the street nor increase the cost to the city of keeping it in repair.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Nos. 9 and 319 January Term 1890, Sup. Ct.; court below, No. 1 August Term 1889, C. P. in Equity.

On July 1, 1889, the Easton, South Easton and West End Passenger Railway Company filed a bill in equity against the city of Easton and others, officers and members of the highway department of said city, praying for an injunction to restrain the defendants from obstructing, taking up, removing or otherwise interfering with the plaintiff's railway track on South Third street in the city of Easton or elsewhere, and from in

---

*See Millvale Bor. v. Evergreen Ry. Co., 131 Pa. 1.

anywise obstructing or interfering with the exercise of the plaintiff's franchises. Upon the filing of the bill a preliminary injunction was awarded thereon, which, after hearing, the court, SCHUYLER, P. J., by opinion and order filed August 12, 1889, refused to continue. Thereupon the plaintiff took an appeal from said order to No. 9 January Term 1890 Sup. Ct.

The defendants having answered the bill and issue having been joined thereon, the court, on September 2, 1889, by agreement of counsel, appointed *Mr. R. C. Stewart*, as examiner and master, who subsequently reported the following

### FINDINGS OF FACT.

The Easton and South Easton Passenger Railway Company was incorporated by act of March 27, 1866, P. L. (1867) 1392, with authority to build and operate a street railway in and between the boroughs of Easton and South Easton, occupying for that purpose any of the streets of said boroughs. Its property and franchises were sold at judicial sale on March 8, 1886, to Henry A. Sage, and on May 14, 1886, in pursuance of said sale, it was re-organized under the same name and formally adopted the provisions of article XVI. of the constitution. On May 31, 1886, the corporation plaintiff was organized by the consolidation of the Easton and South Easton Passenger Railway Company with the West End Passenger Railway Company, the latter company being the successor, in pursuance of a judicial sale and reorganization, of the West Ward Passenger Railway Company, incorporated by act of May 5, 1871, P. L. (1873) 958, and having likewise accepted said constitutional provisions.

The borough of Easton was incorporated by act of September 23, 1789, 2 Sm. L. 497, amended by act of March 19, 1828, P. L. 183. On January 13, 1887, it was erected into a city under the act of May 23, 1874, P. L. 230. By municipal ordinance approved April 13, 1887, the highway department of the city of Easton was created. It consists of the standing street committees of the select and common councils, and the ordinance commits to this department the charge, subject to the control of councils, of all matters relating to the streets of the city. On June 17, 1889, an ordinance of said city was enacted providing:

" That it shall be the duty of all passenger-railway compa-

nies to conform to the surveys, regulations and gradients as they are now or may be hereafter established by law. They shall submit all proposed plans, courses, styles of rails, and the manner of laying the same, either as to repairs, extension or construction of such railway, to the highway department, for their approval and sanction, which shall be obtained before they proceed to make such repairs, break ground, or occupy any of the streets, roads, avenues or alleys within the limits of the city."

The Easton and South Easton Passenger Railway Company laid out and constructed a railway, some time in the year 1867, commencing at the public square, Easton, extending down South Third street over the Lehigh bridge, through a part of Williams township, and on to South Easton. This railway was built with the flat or flange rail throughout its entire length, and the company continued to use this railway and this style of rail until November, 1888. In November, 1888, the complainant took up the flat rail on South Third street and relaid the track with T rail, until within twenty yards of the Lehigh bridge. At this point a flat rail about eight feet in length was used to connect the T rail with a cast iron grooved or slot rail, that was used on a sharp curve as the track entered on the bridge. These curved slot rails were cast expressly for the curve at the bridge from patterns made by a surveyor who had determined the exact radius of the curve at the entrance of the bridge, and could only be used again at a place where the curve was the same as at the place in question. They could not be straightened or bent in any manner, and had to be used as they were first made or cast.

The T rails that were laid in November, on South Third street, were placed on the street for a period of three or four weeks before they were laid, and the work of laying them occupied about two weeks and a half. They were laid according to a grade furnished on application to the city engineer by the company, and without any application on the part of the company to the city for permission to use T rails, and without any notice from the city to the company not to use them.

In June, 1889, the old bridge over the Lehigh was removed and a new one built at the same place. The only changes that were made in the approach to the bridge at its northern end,

were a lowering of the grade to the extent of five feet; and the bridge was moved west about fifteen feet, the centre line of the new bridge being the same as the centre line of the old bridge. The street approach was lowered and widened to meet the changes in the bridge. On Sunday morning, June 23, 1889, the city, in pursuance of a contract made by it with the commissioners of the county of Northampton, acting by its contractor, took up and removed the track of the complainant from the bridge, north to the northern side of Washington street. This portion of the track was composed of the grooved or slot rail and one length of T rail.

The complainant company was not notified that this track would be taken up, and the officers of the company during the following week repeatedly requested the contractor and the city engineer to restore their track, and to furnish the company means to carry on their business. The condition of the street and of the bridge was such that the track could have been laid while the work of lowering the approach was going on, but no track was laid by the city, nor does it appear that the city made any preparation to re-lay the track or to procure proper materials for so doing. As found above, the old slot rails could not have been used in the construction of the new track after the bridge was changed.

On the night of June 29, 1889, at about eleven o'clock, the company complainant, by its agents, re-laid the track according to the grade furnished by the city engineer to the contractor and marked by him, with T rails, from the place where the city took them up to the bridge. The ground occupied by the track as laid on June 29th and 30th was not exactly the same as the ground occupied by the old track. Commencing from the same point at the northern portion of the new track, a centre line to the bridge would be fifteen feet to the west of a centre line of the old track at its southern end; but with reference to the side of the bridge, and to the side of the street, the new track occupied substantially the same location as the old track. The sharp curve and the switch were done away with; and, with the exception of a slight curve the line was nearly straight. At the time of the hearing, the line occupied this latter location, and was built at grade, with the exception of a necessary elevation on outer rail of the slight curve referred to.

Statement of Facts.

A few days before the company laid this track with T rails, a notice was served on them from the commissioner of highways as follows: " To the Easton and South Easton Railway Co.: I am instructed to notify you not to lay a T rail on South Third street to the approach of the Lehigh bridge, now being erected. A. J. Cooper, Commissioner of Highways."

On Monday, July 1st, six members out of the seven of the highway department met and adopted the following resolution : " WHEREAS, The Easton and South Easton and West End Passenger Railway Company, without the sanction of the city authorities, and in violation of the city ordinance, about one o'clock on Sunday morning, June 30, 1889, with the employees of the Lehigh Valley Railroad Company and other persons, have laid down T rails where before flat rails were laid, on South Third street approach to Lehigh bridge, which rails have proved to be public nuisances and obstructions to public travel, and said rails do not conform to the grade lines established by the city: therefore, be it Resolved, That the city engineer is hereby directed to forthwith remove the rails from said street as being dangerous to travel and not conforming to the grade line, and imposing upon the city liabilities for injury occasioned thereby."

On the morning of the same day, Monday, July 1st, the defendants, with their agents, took up and removed the rails of the company from the bridge northwardly to a point a short distance beyond the point where the contractor had taken them up on June 23d. At the time when the injunction was served on the defendants, the work was not going on, but the workmen had stopped at 6 o'clock in the evening. The rails were taken up forcibly against the protest of the company's officers, and to the interruption of their business. When injunctions were served, defendants' agents were in possession, and were guarding the work of destruction of the day of July 1st.

The kind of rail generally used during the past twenty or twenty-five years was the flat or flange rail, in the construction of street-passenger railways. . . . .

The kind of T rail used on South Third street, and laid as that rail was, flush with the street on an iron chair, is the one fitted for use on that street and generally for use on the streets of a city. It is of the same style and character as the one

used on steam railroads, but it is smaller, lighter, and is laid in a different manner from the way rails are laid on steam railroads. When laid flush with the street, it presents no obstruction at all to public travel, and the public are not deprived of their use of all parts of the street. At the time of the hearing, the evidence showed that the particular portion of South Third street, to wit: that on the approach on which T rails were laid, was in excellent condition; that, on the balance of the street, from Washington street to the public square, the burden imposed on the street, both as to inconvenience of the traveling public and encumbrance on the highway, was no greater than would have been occasioned by the use of a flat or flange rail. The master cannot find that the use of a T rail imposes on the municipality a greater burden in keeping the street in repair than does a flat or flange rail; or that the T rail, compared with a flat or flange rail on a public street, occasions a public nuisance. The master finds that, as a matter of fact, the T rail used by the complainant on South Third street, Easton, was one suitable for the purposes of a street passenger railway.

—Upon the facts so found by him the master reported the following as his

CONCLUSIONS OF LAW.

1. That complainant had a vested legal right to re-lay their tracks on South Third street, on the location they selected in 1867 and have used continuously down to the present time.

2. That complainant had a vested right to use on the above mentioned track on June 30, 1889, any kind of rail suitable for the purposes of a street-passenger railway, and that complainant was to be the judge of the kind of rail to be used.

3. That the defendants committed a trespass on the rights of the complainant in tearing up and removing complainant's track on July 1, 1889.

4. That the question whether complainant is bound by the provisions of the constitution of 1874, and the subsequent acts of the legislature in carrying into effect the provisions of § 7, article XVII. of the constitution, has no application to the facts of this case.

5. That whether the ordinance of the city of Easton passed June 17, 1889, is a valid and legal ordinance or not, has no application to the facts of this case, and that, under the facts of this case, complainant is not bound by its provisions.

6. That this court has jurisdiction of this case and the parties thereto in this proceeding.

—The master, in support of his conclusions of law, citing and considering Commonwealth v. Pass. Ry., 52 Pa. 507; Danville etc. R. Co. v. Commonwealth, 73 Pa. 38; Section 16, act of May 23, 1878, P. L. 111; Fields v. Stokley, 99 Pa. 306; Klingler v. Bickel, 117 Pa. 326; Williamsport Pass. Ry. Co.'s App., 120 Pa. 1; Commonwealth v. Railway Co., 127 Pa. 278; Hestonville etc. R. Co. v. Philadelphia, 89 Pa. 210; Millvale Bor. v. Evergreen Ry. Co., 131 Pa. 1; Hays v. Commonwealth, 82 Pa. 518; Penna. R. Co. v. Duncan, 111 Pa. 358; s. c. 129 Pa. 181; Pittsburgh's App., 115 Pa. 4; Frankford etc. Ry. Co. v. Philadelphia, 58 Pa. 119, recommended a decree perpetually enjoining and restraining the defendants from obstructing, taking up or removing the plaintiff's tracks on South Third street, or on any other street of the city of Easton, where the rail commonly known as the T rail is now laid and used by said company, and that the defendants pay the costs.

Exceptions upon the part of the defendants to the report of the master were filed with and overruled by him, and were afterwards renewed before the court, when, after argument, the court, SCHUYLER, P. J., delivered an opinion, printed at length in Passenger Railway v. Easton, 7 Pa. C. C. R. 577, holding that the plaintiff must exhibit a clear right to entitle it to an injunction; that the master's finding to the effect that the T rail when laid flush with the street presented no obstruction at all to public travel, did not lift the question of obstruction out of the region of doubt, inasmuch as the question of nuisance was to be viewed, not with reference to a fanciful condition of affairs, but with reference to the condition of the streets as it was certain to exist, and every one knew that the rails would not be kept flush with the streets; that, "under such circumstances, the plaintiff had no right to call upon the master, and has no right to call upon this court, on a motion for an injunction, to decide the question of nuisance or no nuisance;" citing New Castle v. Raney, 130 Pa. 546; that, citing Commonwealth v. Railroad Co., 27 Pa. 351; Platt v. Railroad Co., 99 U. S. 48, and Clarke v. Bridge Co., 41 Pa. 159, the plaintiff's charter must be taken as intended to au-

thorize the use of the flat rail and no other, the T rail being at the time it was granted unheard of in connection with street railways, and the flat rail the only one then in use in their construction; that, at all events, as doubt was sufficient to stay the hands of a chancellor, especially in a case like this, where the injury could have been compensated and the plaintiff's right established by an action at law for damages, the injunction prayed for by the plaintiff should be refused; entering a decree that the plaintiff's bill should be dismissed with costs.

—Thereupon the plaintiff took this appeal, assigning the decree of the court below dismissing the plaintiff's bill, for error.

*Mr. Frank Reeder* and *Mr. Henry W. Scott* (with them *Mr. F. Green*), for the appellant:

1. A railroad company having such absolute powers as the plaintiff is invested with, under the act of March 27, 1866, P. L. (1867) 1392, possesses a discretion to determine by its board of directors, what kind of rail it shall use and what changes in the style of rail it shall make: Millvale Bor. v. Railway Co., 131 Pa. 1. There being nothing in its charter subjecting the exercise of its powers to the control of the city, it is independent of the city councils: Pittsburgh's App., 115 Pa. 4; Williamsport Pass. Ry. Co.'s App., 120 Pa. 1. It is not pretended that in some proper way the company may not be made subject to municipal control under the general police power, but the city cannot impair or abridge any part of the franchise conferred by the plaintiff's charter. Nor is it asserted that the discretion of the board of directors is not subject to review; it may be reviewed by the courts, but in the first instance it is to be exercised by the board of directors themselves, and their exercise of it can be reviewed, even by the courts, only in a direct proceeding for the purpose, not collaterally: Parke's App., 64 Pa. 137; Struthers v. Railway Co., 87 Pa. 282; Cleveland etc. R. Co. v. Speer, 56 Pa. 325; New York etc. R. Co. v. Young, 33 Pa. 175; Penna. R. Co.'s App., 128 Pa. 509. And, where the question is properly before the courts, they will not review the discretion exercised by the company, unless it has been grossly abused: Anspach v. Railroad Co., 5 Phila. 491.

2. After an act has been done by a corporation involving the

question of the exercise of its corporate franchises, no one can complain except the commonwealth : Cleveland etc. R. Co. v. Speer, 56 Pa. 325 ; Mon. Bridge Co. v. Kirk, 46 Pa. 130 ; Sparhawk v. Pass. Ry. Co., 54 Pa. 421.   It is unnecessary, however, that we should go so far as that, for there is no record of any complaint here.   No cross bill has been filed and there is no prayer that the court review the exercise of the plaintiff's discretion, and therefore the determination of the plaintiff's board of directors is as conclusive in this proceeding as if it had already been determined, by a decree of court, that the right to change from the flat to the T rail exists.   The members of the highway department, or even the councils themselves, cannot overrule the discretion of the company, and undo what it has done by force and without a resort to the courts, and equity will restrain them from taking such a course : Penna. R. Co.'s App., 128 Pa. 509.   The defendants tore up a part of the track which was laid in November, 1888, with the city's acquiescence. They are bound by that acquiescence, which was without any ignorance of the facts : Rex v. Trevenen, 2 B. & Ald. 343 ; Penna. R. Co.'s App., supra.   The question of damages to the plaintiff is not an element in this case ; equity has jurisdiction of the bill, because the question is as to the invasion of a legal right : Commonwealth v. Railroad Co., 24 Pa. 160.   Besides, it is sufficient that the remedy is more convenient, and the remedy at law inadequate : Bierbower's App., 107 Pa. 14 ; High on Injunctions, § 702.

3. If the question whether the T rail is a nuisance, is to be considered in this case, the burden of proving the fact of nuisance was upon the defendants who alleged it as a defence : Brightly's Eq., 519 ; Vollmer's App., 61 Pa. 131 ; Patterson v. Silliman, 28 Pa. 312 ; Hart v. Ten Eyck, 2 Johns. Ch. 88 ; Eberly v. Groff, 21 Pa. 256 ; Commonwealth v. Cullen, 13 Pa. 143 ; Coleman v. Ross, 46 Pa. 184 ; Shea's App., 121 Pa. 302. It cannot be treated as a nuisance per se, as in laying it the plaintiff was exercising an authority conferred by law : Danville etc. R. Co. v. Commonwealth, 73 Pa. 29 ; Commonwealth v. Reed, 34 Pa. 275 ; People v. Law, 34 Barb. 494 ; People v. Gas Co., 64 Barb. 55 ; Millvale Bor. v. Railway Co., 131 Pa. 1. When the evidence is conflicting upon the question of nuisance, a chancellor will not interfere except in extreme cases : New

Castle v. Raney, 130 Pa. 546; Rhea v. Forsyth, 37 Pa. 503; and the plaintiff is entitled to a trial by jury before its property shall be condemned and destroyed as a nuisance : New Castle v. Raney, supra. Both the plaintiff and this court have the right to object to the summary manner in which the court below overruled the master's findings : Scheppers' App., 125 Pa. 598; Griffin's App., 109 Pa. 150; Bugbee's App., 110 Pa. 331. Moreover, the mere acceptance of article XVI. of the constitution did not subject the plaintiff to § 9, article XVII., or to the control of the local authorities, at least as to streets previously occupied; and the municipal ordinance of June 17, 1889, is void as to us, because our charter does not subject us to municipal control : Pittsburgh's App., 115 Pa. 4; because it is unreasonable as to the extent of power it delegates to the highway department: Philadelphia v. Railway Co., 3 Brewst. 573; because it is a delegation of legislative power : Dillon on Mun. Corp., §§ 96, 779; 9 Am. & Eng. Encyc. of Law, 315; and because it is ex post facto.

*Mr. H. J. Steele*, City Solicitor, and *Mr. O. H. Meyers*, for the appellees :

1. A private corporation having authority to use the streets of a municipality, is subject to municipal regulation, unless specially excluded by the act conferring its rights: Commissioners v. Gas Co., 12 Pa. 321; Frankford etc. Ry. Co. v. Philadelphia, 58 Pa. 119; Johnson v. Philadelphia, 60 Pa. 451; Middlesex R. Co. v. Wakefield, 103 Mass. 263; Railroad Co. v. Richmond, 96 U. S. 521; West Phila. Pass. Ry. Co. v. Philadelphia, 10 Phila. 70. Acts incorporating other similar companies and expressly subjecting them to such regulation, cannot be resorted to for the purpose of inferring that it was intended by the plaintiff's charter to exempt it therefrom : Merchants' Bank v. Shouse, 102 Pa. 492. In Pittsburgh's App., 115 Pa. 4, the existence of a right of police regulation, which is all we claim in this case, was recognized. The rails which were torn up by the defendants in this case, were laid in defiance of an ordinance and a notice not to lay them, and there is no pretext for the assertion that the city acquiesced in their being laid. If it had done so, that would make no difference, as the rights of the public cannot be affected by the laches of

Arguments.

public officers: Hachnlen v. Commonwealth, 13 Pa. 617.   The railway company being the plaintiff, asking a court of equity to restrain interference by the city with the putting down of a kind of rail different from that which has been used for twenty years, it must show a clear legal right: Philadelphia's App., 78 Pa. 33; Harkinson's App., 78 Pa. 196; Brown's App., 62 Pa. 17.

2. The plaintiff's charter confers such rights only as are granted expressly, or, being imperatively necessary to accomplish the purposes of the powers expressly given, are implied by reason of that necessity: Philadelphia v. Railroad Co., 25 W. N. 322; Fertilizing Co. v. Hyde Park, 97 U. S. 666; Commonwealth v. Pass. Ry. Co., 52 Pa. 516.   Applying this rule of construction, as the charter is silent as to the kind of rail to be used, it must be held that the legislature intended the one in general and ordinary use in this state at that time, which, it is undisputed was the flat rail: United States v. Railroad Co., 91 U. S. 79; Platt v. Railroad Co., 99 U. S. 63; Clarke v. Bridge Co., 41 Pa. 157; Emerson v. Commonwealth, 108 Pa. 128.   The very question as to the kind of rail the legislature had in mind, seems to be placed beyond doubt by Commonwealth v. Pass. Ry. Co., 52 Pa. 506.   The silence of the charter on the subject does not authorize the inference that the company may use what rail it pleases.   Silence as to motive power has not been so regarded: North Chicago Ry. Co. v. Lake View, 105 Ill. 207 (44 Am. Rep. 788); and whenever companies have desired to use other than animal power, they have obtained express legislative sanction: acts of May 8, 1876, P. L. 147; May 24, 1878, P. L. 118.

3. Whether a municipal ordinance is reasonable and valid is a question for the court, in determining which regard will be had to the circumstances of the particular city, the objects sought to be attained, and the necessity which exists for the ordinance: Dillon on Mun. Corp., § 327; Commissioners v. Gas Co., 12 Pa. 318; Hibernia F. Engine Co. v. Harrison, 93 Pa. 264.   And the court will not be hasty in declaring ordinances unreasonable: Fisher v. Harrisburg, 2 Gr. 291; O'Maley v. Freeport Bor., 96 Pa. 24.   The ordinance here in question is reasonable and valid as an exercise of the city's police power: Commonwealth v. Robertson, 5 Cush. 438; Penna. R.

Co. v. Jersey City, 47 N. J. L. 286; Philadelphia v. Union Telegraph Co., 2 W. N. 455. It is not open to the objection that it is a delegation of legislative authority : Railroad Co. v. Marion Co., 36 Mo. 294; Commonwealth v. Pittsburgh, 14 Pa. 177; Dillon on Mun. Corp., § 289; Philadelphia etc. Co. v. Philadelphia, 17 Phila. 110; Commonwealth v. Davis, 140 Mass. 485. The plaintiff, while admittedly violating this ordinance, has no standing in equity to ask for an injunction : Hines v. New Haven, 40 Conn. 478; Klingler v. Bickel, 117 Pa. 338; Thirteenth etc. St. Ry. Co. v. Philadelphia, 13 W. N. 487. Again; if the words railroad and railway are synonymous, as stated in Hestonville Ry. Co. v. Philadelphia, 89 Pa. 219, the act of June 9, 1874, P. L. 282, amounts to a prohibition of the re-location and change of the plaintiff's track without the city's consent: Philadelphia v. Railroad Co., 25 W. N. 321; McAboy's App., 107 Pa. 557; Duncan v. Railroad Co., 94 Pa. 444.

4. The plaintiff having accepted the constitution of 1874, its provisions must be given the same effect as if written in the plaintiff's charter. By it the construction of street railways, that is, the manner of laying the tracks, is placed within the control of the municipal authorities. It is clear that the company's change in its style of rail rests upon no real necessity, but simply upon a convenience of its own making and having regard to expense only. Economy is not a sufficient reason for making such a change to the detriment of the public and the city : Penna. R. Co.'s App., 93 Pa. 150; Groff's App., 128 Pa. 621. The testimony being conflicting as to whether the use of the T rail creates a public nuisance, equity will not interfere until that question of fact is determined by a jury. A nuisance may be abated peaceably by the party aggrieved : Rung v. Shoneberger, 2 W. 26; Rhea v. Forsyth, 37 Pa. 506; Lancaster Tp. Co. v. Rogers, 2 Pa. 114; Scranton City v. Catterson, 94 Pa. 202. The plaintiff stands in the attitude of maintaining a nuisance and asking a court of equity to assist it in its wrong doing. It has failed to show that it will suffer irreparable damage and that no adequate remedy exists at law. When legal rights are asserted on one side and denied on the other, the remedies are at law : Washburn's App., 105 Pa. 480; Camden Coach Co. v. Horse Car Co., 29 N. J. Eq. 299; Dillon on Mun. Corp., § 907. The only question upon which Millvale

Bor. v. Railway Co., 131 Pa. 1, is authority, is as to the con-
stitutionality of the statutes therein involved.

OPINION, MR. CHIEF JUSTICE PAXSON:

It is conceded that the appellant company is a corporation
chartered by act of assembly in 1866, and that it has the right,
under its charter, to occupy any of the streets of Easton and
South Easton with its road; that said company has constructed,
and has for many years maintained, a railroad upon Third
street, in Easton, for the purpose of carrying passengers over
the same; that there is nothing in its charter which prescribes
the kind of rail to be used; that when originally constructed,
in 1867, the flat rail was laid, and that the same was used con-
tinuously until November, 1888, when said company took up
its track on Third street, and re-laid it with T rails, to a point
at the southerly terminus of the street, near the entrance to
the county bridge across the river Lehigh, and made a similar
change in the rails on its road along Fourth street and North-
ampton street; that at the time of this change there was no
ordinance of the city prohibiting the use of this kind of rail,
and, if not conceded, it was certainly proved clearly, that the
purpose of appellant company to reconstruct its track with T
rails was known to the city engineer, the members of the high-
way department, and the city councils, and formed a subject
of discussion at the highway department; that no objection or
remonstrance was made thereto by the city, or by any author-
ized agent thereof; that the city engineer was called upon by
the company to furnish it with cross-section grades of the
street, in order that its tracks might be built to conform thereto;
that he complied with this request, and his action in doing so
was formally approved by resolution adopted concurrently in
both branches of city councils on November 2, 1888; that on
June 17, 1889, the city councils passed an ordinance, the first
section of which provided as follows: " That it shall be the
duty of all passenger-railway companies to conform to the sur-
veys, regulations, and gradients as they are now or may be
hereafter established by law. They shall submit all plans,
courses, styles of rails, and the manner of laying the same,
either as to repairs, extension, or construction of such railway,
to the highway department, for their approval and sanction,

which shall be obtained before they proceed to make such repairs, break ground, or occupy any of the streets, avenues, or alleys within the limits of the city." Without going into tedious detail, it is sufficient to state that in June, 1889, upon the rebuilding of the county bridge over the Lehigh river, the street approach was lowered and widened to meet the changes of the bridge; the track of the company from the bridge to the northern side of Washington street was taken up without notice to the company, by the contractor in charge of the work; that the city refused to re-lay the track, and, after several days had elapsed, the company, on June 29th, proceeded to re-lay it; that, a few days before the track was so re-laid, a notice from the commissioners of highways was served on the company not to re-lay said track with T rails; that on the morning of Monday, July 1st, the city, through its officers and agents, proceeded to tear up the track which had been thus re-laid. The company then filed this bill against the city, its mayor, officers, and members of its highway department, praying for an injunction to restrain them from any further interference with its road; a temporary injunction was granted; the track was re-laid; the case proceeded to final hearing; and it now comes up upon appeal from the final decree of the court below dismissing the plaintiff's bill.

The contention of the city is that it has the absolute right to control the kind of rail to be used by the company, the manner of laying it, and also the repairs to the track. The company contends, on the other hand, that by its charter it has the right to lay down any rail in its discretion, suitable for the purposes of its road, which does not interfere seriously with the rights of the citizens to use their streets; that they are not to be held to the rail first adopted, because first used, but may take advantage of any improvements in railroad construction; and that the T rail which they have adopted, from its small size, and the manner in which it is laid, interferes with the public use of the streets as little as the flat rail formerly in use, while it is far cheaper and more economical. The master took a vast amount of testimony as to the merits of the respective rails, ninety-nine witnesses having been examined on this point alone, and found as a matter of fact that the T rail used by the company was one suitable for the purposes of a

street-passenger railway; that the burden imposed on the street by the use of the T rail, both as to the inconvenience of the traveling public and encumbrance to the highway, was no greater than would have been occasioned by the use of a flange or flat rail; and that he cannot find that the use of a T rail imposes upon the municipality a greater burden in keeping the street in repair than does a flat or flange rail. The learned judge below practically reversed the master upon all these findings of fact, and dismissed the bill. While this matter is not of much importance, in our view of the case, it is only fair to the master to say that his findings are fully sustained by the evidence. As now presented, however, it must be disposed of upon other principles.

The bill was filed by the appellant company to restrain the city and its officers from "obstructing, taking up, removing, or otherwise interfering with the plaintiff's railway track on South Third street, in the city of Easton or elsewhere, or in anywise obstructing or interfering with plaintiff in the exercise of its franchises." The company has alleged and proved the commission of certain acts which it contends were unlawful, and which resulted in the tearing up of its track, and an interference with its franchises, traffic, and business. There is no manner of dispute as to what the city has done, and it remains to determine whether such action was lawful, and performed in a lawful manner. If unlawful, it is very plain that the decree below must be reversed, and the injunction must go.

We have very decided views in regard to the course pursued by the city officials. There was a dispute between them and the appellant company as to the kind of rail to be used. It was a dispute not unlikely to arise, under such circumstances. It presented a fair subject for contention, and the law provides adequate and orderly ways of settling such differences. The question here is, not what were the merits of this controversy, —upon that subject we are not now called upon to express an opinion,—but were the city officials justified in deciding this question, both as to its law and its facts, and then carrying their decree into effect by an act of brute force? Could the officials of the highway department, after seeing these rails laid down months before, and making no objection thereto, sud-

denly decide that it was an unlawful structure, and proceed to abate it with a strong hand? Conceding that the city had rights in this matter which the company were bound to respect, it is equally clear that the company had rights which the city officials were bound to respect. It is true a municipality may, with the strong hand, abate a public or common nuisance, which endangers either the health or the safety of its citizens. This much was decided in Klingler v. Bickel, 117 Pa. 326. But no one contends that this road was a nuisance of this character, if a nuisance at all. Nor is there any analogy between this case and that of the obstruction of a public highway by an unauthorized person. It was a track laid down upon the streets, under the authority of chartered rights, and if the kind of rail used was not the best for the interests of the city, yet it was put down in entire good faith and by authority of law. We cannot assent to the proposition that the company is bound by its charter to the same kind of rail in use when the charter was granted. There is neither reason nor law to sustain it. Such a construction would deprive the company of the benefit of any advance in railroad science, and would prevent the adoption of a better rail, even if the same were advantageous both to the company and to the city. There was nothing in the case to justify the conclusion that this track as laid with the T rail was a public or common nuisance, which the highway department could forcibly and of its own will abate. The learned judge below appears to have felt the force of this, for, after a discussion of the facts, he makes use of this language: " Under such circumstances, the plaintiff had no right to call upon the master, and has no right to call upon the court, on a motion for an injunction, to decide the question of nuisance or no nuisance;" citing New Castle v. Raney, 130 Pa. 546. In this he was entirely right, yet the question naturally suggests itself, if the master and the court below had no right to decide a question of nuisance or no nuisance upon a motion for a special injunction, what right had the chief commissioner of highways and his assistants, who are not presumed to be learned in the law, to decide for themselves, without any proceeding before them, that this track as laid was a common nuisance? If they did not so decide; if in point of fact the track was not a common nui-

sance, they had no right to tear it up; they were merely trespassers and rioters, and liable civilly and criminally as such. We are emphatic upon this point, because we do not wish to be misunderstood. There is a growing disposition in this commonwealth, especially on the part of corporations, private as well as municipal, to take the law into their own hands, and settle controversies by force, instead of appealing to the courts to redress their wrongs and enforce their rights in an orderly and peaceable manner. Instances are not rare, and are of recent occurrence, where bands of men have stood confronting each 'other, some of them with arms in their hands, in the assertion of supposed rights. The public peace has been threatened in this manner, sometimes resulting in loss of life. It is well that it should be known that such persons, whether representing individuals, private corporations, or municipalities, are simply rioters, and answerable to the criminal law for their conduct. It is a serious mistake to suppose that municipal officers are above the law, and can enforce civil rights, or perform even police duties, in their own way, in disregard of the forms of law. The officers of a municipality, from the mayor down to a police officer, are as much bound by the law as a private citizen, and have no license to transgress the law in the enforcement of the law.

The defendants have no right in this proceeding to ask this court to settle any question affecting the rights of the city in the matter in controversy. They have not filed a cross-bill, nor have they applied to this court or any other court to adjust the differences between the city and the appellant company. They have no prayer for relief. On the contrary, they have assumed to decide the delicate questions involved for themselves, and to enforce their decision by the strong hand. This cannot be permitted. We are of opinion that their acts were unlawful, and that the plaintiff is entitled to the relief prayed for.

> The decree is reversed, and the bill reinstated; and it is ordered that the record be remitted to the court below, with directions to issue an injunction as prayed for; the costs to be paid by the appellees.