THE ELECTRIC RAILWAY COMPANY OF GRAND RAPIDS v. THE COMMON COUNCIL OF THE CITY OF GRAND RAPIDS.

<div style="float:right">84 257<br>d118 136</div>

*Municipal corporations—Grant of franchise—Vested rights—Void condition.*

The condition attached by respondent to the use by the relator of wooden poles outside of the fire limits of the city, that it should furnish passengers with transfers on certain designated lines of its road without additional charge, is held inoperative and void, being in conflict with section 14, chap. 95, How. Stat.; but as the relief prayed for by relator has been voluntarily granted by respondent, a *mandamus* is denied.

*Mandamus.* Submitted November 18, 1890. Denied December 24, 1890.

Relator applied for *mandamus* to compel respondent to proceed and approve of the kind and pattern of poles to be used by relator for the purpose of operating its road. The facts are stated in the opinion.

*Montgomery & Bundy,* for relator.

*Wm. Wisner Taylor* (*Smiley & Earle,* of counsel), for respondent.

Long, J. The relator is a corporation organized under chapter 95, How. Stat., which provides for the organization of street railway companies.

Section 13 of the act provides that such railway company organized under the provisions of the act may, with the consent of the corporate authorities of the city given in and by an ordinance duly enacted for that purpose, and under such rules, regulations, and conditions as in and by such ordinance shall be prescribed,—

"Construct, use, maintain, and own a street railway for the transportation of passengers, * * * but no such railway company shall construct any railway in the streets of any city or village until the company shall have accepted in writing the terms and conditions upon which they are permitted to use said streets."

Section 14 of that chapter is as follows:

"After any city, village, or township shall have consented, as in this act provided, to the construction and maintenance of any street railways therein, or granted any rights and privileges to any such company, and such consent and grant have been accepted by the company, such township, city, or village shall not revoke such consent, nor deprive the company of the rights and privileges so conferred."

The relator sets forth in the petition that, on October 24, 1889, an ordinance was granted by the common council of the city of Grand Rapids to Samuel Mather and others, and their associates, to be afterwards organized into a body corporate, authorizing them to maintain and use street railways in certain streets in the city of Grand Rapids; that the corporation was organized and the ordinance accepted by the corporation, and that the company was organized to operate a street railway system

already constructed in the main, constituting various lines of street railway in said city, having definite *termini*, and that cars had been run over said routes for a long time, under definite authority by ordinance granting permission to the Street Railway Company of Grand Rapids, to whose rights the relator had succeeded; that on December 16, 1889, another ordinance was granted to the same parties, authorizing them to maintain street railways in other streets of the city, which ordinance has been accepted by the relator, and the rights granted in this ordinance have also been assigned to relator. It is further claimed by relator that in each of said ordinances, by sections 5, 7, and 15, it is provided as follows:

"SEC. 5. The cars to be used on said railway shall be drawn by electricity, or such motive power as may seem best to said company, and permission and authority are hereby given to said grantees and their assigns to place and erect in the streets of said city, on either side thereof, wherever their street railway tracks are constructed, suitable poles for suspending electric wires through and over said streets, the kind and pattern thereof to be approved by the common council of said city before the same are erected; to place in and over said streets wires and cables for the purpose of conducting electricity thereon, suitable and necessary insolating appliances, and suspension wires or cables."

"SEC. 7. The rate of fare on said railway shall be determined by said company, and shall not exceed five cents for each passenger on any car from its starting-point to the terminus of its route, and satchels in the possession of passengers shall be carried free of charge: *Provided*, that for extra cars, specially chartered, the said grantees may fix the rate of fare."

"SEC. 15. It is hereby reserved to the common council of said city the right to make such further rules, orders, and regulations as may, from time to time, be deemed necessary to protect the interest, safety, welfare, or accommodation of the public in relation to said railway, and the streets through which it passes."

It is further set forth in the relator's petition that in July last it petitioned the common council to approve of the kind and pattern of poles to be used in its system, and submitted plans to the council; that the subject was referred to the committee on streets, which committee reported that they, after carefully examining the proposed poles, recommended for adoption and approval of the common council the following:

"1. Iron poles, to be the E. P. Morris poles, or an iron pole of the same dimensions, and substantially like said E. P. Morris poles, and all of equally good workmanship, finish, and style.

"2. For the wooden poles the octagonal red pine pole, as manufactured by Browlee & Co., or a wooden pole substantially like said Browlee & Co.'s pole as to material, dimensions, style, and finish," etc.

That on July 20, 1890, the committee made a further report, in which it was recommended that the fire limits of said city, as now constituted, be designated as the district wherein iron poles only should be used, and that iron or wooden poles could be used in all parts of the city outside of the fire limits, at the option of the railway company; and that on July 28 said report was amended by adding the following thereto:

"And, in consideration of granting said street railway company the privilege of erecting said wooden poles in certain public streets of the city, said company shall be required to furnish its patrons, through its conductors, drivers, or agents on or in charge of their several street-railway cars, without additional cost, transfer tickets on the following named lines, namely: Cherry street and Eighth ward line; West Bridge street and Ionia line; Wealthy avenue and Scribner street line; passengers to be, on demand, furnished with transfer tickets good on the so-called Hall street and Plainfield avenue line, and said Hall street and Plainfield avenue line passengers to be, on demand, furnished with transfer tickets good on the above enumerated lines, namely: Cherry street and Eighth ward line; West Bridge street and Ionia line;

Wealthy avenue and Scribner street line. And thereupon said report of said committee was by said common council adopted."

The petition sets forth further, in substance, that on August 18, 1890, and on September 28, 1890, the railway company asked the council to approve of the kind and pattern of pole to be used in the construction of the railway line, and that the common council have taken no action thereon.

The respondent makes a return in which it admits the making of such ordinances, the organization of the relator as a corporation, the acceptance of the ordinances by the corporation, and that the ordinances are correctly set forth in the relator's petition. It is claimed, however, that no definite and various lines of street railway having definite *termini* were established, but the right was given to the street-railway company to operate a street railway over the streets theretofore occupied by several street-railway companies, as one route, and nowhere in said ordinances were various routes having different *termini* fixed or specified, but that the entire system constituted one route.

It is claimed, on the part of the relator, that the condition annexed by the common council to the permission to erect wooden poles in all parts of the city outside the fire limits, as adopted by the council on July 28, 1890, is invalid, and beyond the power of the council to prescribe; that the action of the council shows that it is not necessary to erect iron poles outside such fire limits, but the condition upon which the relator is permitted to erect the wooden poles in such territory is an effort on the part of the city to drive a bargain with the relator, and compel it to accept this condition in consideration of the common council doing precisely what it had

already agreed to do by its ordinance, and what it was bound to do; that is, to fix the kind and pattern of poles. to be used. The prayer of the relator is that the common council be required to proceed to approve of the kind and pattern of poles to be used by the relator for the purpose of operating its road under the right granted it by the ordinances.

We are satisfied from an examination of the ordinances:

1. That by section 5 it was the duty of the common council to fix and determine the kind and pattern of poles to be erected and used by the relator.

2. That the common council have so fixed and determined the kind and pattern of such poles by its resolution of July 28, 1890; that is, iron poles within the fire limits of said city, and wooden or iron poles outside of said fire limits.

3. That the condition attached to the use of wooden poles outside of such fire limits is wholly inoperative and void, and beyond the power of the council to prescribe. This condition is in direct conflict with section 14, chap. 95, How. Stat., and is an attempt to deprive the relator of the rights and privileges conferred by the ordinances theretofore adopted, and the terms of which it is conceded the relator had duly accepted.

As the council has already done what the relator prays it may be compelled to do, the writ of *mandamus* must be denied.

CHAMPLIN, C. J., and GRANT, J., concurred with LONG, J.

CAHILL, J. I think the common council has the right, under the powers reserved in the ordinance, to impose the conditions which it has sought to impose upon the relator as a condition precedent to its approval of the

kind of poles to be erected.    Neither do I think that the resolution as passed, with the condition annexed, can be treated as though passed without it, on the theory that such condition is void.[1]

MORSE, J., concurred with CAHILL, J.

---

[1] See *Detroit v. Railway Co.*, 37 Mich. 558.