# State, *Ex rel.* City of Gadsden *v.* Alabama City, Gadsden & Attalla Ry. Co.

## *Mandamus.*

(Decided April 4, 1911.   55 South. 176.)

1. *Municipal Corporations; Public Improvements; Assessment; Attack.*—Where the action is by mandamus to compel a street railway to comply with certain ordinances, so as to prepare its track and roadbed to receive permanent pavement to be placed on the street, the street railway company cannot raise an objection to the assessment, where the parties who are to pay the assessment for the pavement are not raising objections.

8. *Mandamus; Proceedings; Petition.*—In a mandamus to compel a street railway to remove certain rails and replace them with certain other rails as required by a paving ordinance, a petition for mandamus which alleges that the rails required to be taken up are not suitable for the paving provided for in the street and that the paving could not be done in a substantial manner without the removal of the other rails, and the substitution of the ones required by the ordinance, is not subject to the objections that it does not

show that the requirement is a reasonable exercise of the power
vested in the city council, nor that it is necessary to the paving of
the street with the material and in the manner set forth.

3. *Street Railroads; Municipal Regulation; Validity.*—Under sec-
tion 238, Constitution ·1901, and sections 1269 and 1374, Code 1907, a
street railway takes its right to use the streets under a grant of
authority, subject to the paramount right of the municipality to
grade and improve the street, and to make such requirements and
regulation as are necessary and reasonable to make the street suit-
able and convenient for the use of the traveling public.

4. *Same; Presumptions.*—An ordinance requiring a street railway
to remove its rails on portions of the street and to replace them
with seven inch "T" rails weighing not less than eighty-five pounds
per lineal yard, to be placed on good quality of sound cross ties and
ballasted in a first class manner so as to receive the permanent im-
provement to be placed on this street, will be presumed to be a rea-
sonable ordinance until the contrary appears.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Mandamus by the State, on the relation of the City
of Gadsden, against the Alabama City, Gadsden & At-
talla Railway Company. From a judgment sustaining
demurrers to the petition, defendant appeals. Re-
versed, rendered, and remanded.

DORTCH, MARTIN & ALLEN, M. C. SIVLEY, and W. J.
MARTIN; for appellant. When the street railway takes
the grant of authority to use the streets and avenues of
the city, it assumes the burden of using said street as
the city may direct.—Sections 1268, 1269, 1374 and
1359, Code 1907. There is no question about the power
of the legislature to pass these statutes.—*S. C. St. Ry.
Co. v. Sioux City,* 138 U. S. 899. The charter of the
railway company has engrafted on it liability of revoca-
tion or alteration under the Constitution.—134 Ala.
634; 53 Ala. 577; 92 Ala. 366; 104 Ala. 262; 34 Ala. ·330.
The court cannot know that the action taken was unrea-
sonable, in fact, the contrary is presumptively true.—
70 Ala. 365; 147 Ala. 682. It follows that the trial court

was in error in sustaining the demurrers to the bill.
Mandamus was the proper remedy.—78 Ala. 328.

O. R. HOOD, for appellee. Counsel discuss the sections
cited by appellant and insist that it is necessary for ap-
pellant to disclose in its said information the fact that it
proposes to pave said portions of said street, that it has
taken the required steps, and that the change demanded
in appellee's tracks is necessary or desirable to carry
out said plan of street paving, and it must show a clear,
legal right before mandamus can be granted.—19 A. &
E. Enc. of Law, 725. All rights of the corporation legal-
ly acquired are equally beyond legislative interfer-
ence.—*Railway Co. v. Main*, 96 U. S. 511; *Miller v. The
State*, 15 Wall. 478; *Coast L. R. Co. v. Savannah*, 30
Fed. 650; 27 A. & E. Enc. of Law, 40 and 41; *State v.
Corrigan S. R. Co.*, 55 Am. Rep. 361; *T. & S. Bank v.
Arkansas City*, 76 Fed. 282; *Western S. Soc. v. Philadel-
phia*, 31 Pa. St. 175; 1 Dillon, secs. 27 and 66; *City of
Selma v. Mullen*, 46 Ala. 414; *City of Greenville v.
Greenville W. W. Co.*, 125 Ala. 627. The city was with-
out authority to compel the appellee to change its tracks.
—25 A. & E. Enc. of Law, 1173-4 1204; 1 Abb. on Mun-
Corp. 851.

SIMPSON, J.—This is a petition by the appellant,
the relator being a municipal corporation, alleging that
the appellee owns and operates a street railway within
the corporate limits of said city; that the city council of
said city has passed ordinances for the grading, paving,
and otherwise improving certain streets in said city over
which the lines of said railway company run; that said
city council had adopted ordinances "requiring the de-
fendant to remove the rails now laid on said portions of
said streets, and to replace the same with seven-inch T-
rails, said rails to be seven inches in height, and weigh-

ing not less than eighty-five pounds per lineal yard, same to be placed on good quality of sound cross-ties, and ballasted in a first-class manner, so as to receive the permanent pavement to be placed on said portions of said streets;" that the 20th day of June, 1910, was set as the limit within which said order was to be complied with; that a copy of said ordinance was served on the defendant; and that it has wholly failed to comply with the same. The petition prays for a writ of mandamus commanding said defendant to forthwith comply with said ordinance, or to show cause why it should not be required to do so. The alternative writ was issued, and the defendant appeared and demurred to the petition, which demurrer was sustained, whereupon the petition was amended, and the demurrer was refiled, and additional grounds of demurrer were filed to the petition as amended, which demurrers were also sustained, and the appellant appeals from the judgment of the court on said demurrers, which appeal was permitted by the court in accordance with the provisions of section 25 of "An act to declare the powers and jurisdiction of the city of Gadsden, in Etowah county," approved February 27, 1901 (Acts 1900-01, p. 1303). The causes of demurrer numbered 1, 2, 3, 4, 5, 6, 7, 18, and 19 seek to raise the point that the petition does not show that the city had complied with all of the requirements of the statutes in regard to paving, grading, or improving of streets, and assessing the cost thereof against the abutting owners. The petition as amended, with the exhibits thereto, not only shows a compliance with the statutes, but also that the notices were given and a day set in accordance with the statutes for property owners to make objections to said assessment, that said day has passed and no objections were filed, and according to the decisions of this

court it is too late to offer such objections.—*City of
Woodlawn v. Durham,* 162 Ala. 565, 50 South. 356.

However, this proceeding is not to collect an assess-
ment, and, if those who are to pay the assessments are
not raising any objections, this defendant cannot. The
city is proceeding to improve its streets, and the question
is, Has it the power to require the change of the tracks
of the defendant as required?

Some of the remaining causes of demurrers deny that
the city has any right to make such a requirement, and
others raise the point that the petition does not show
that the requirement is a reasonable exercise of the
power vested in the city council, or that it is "necessary
to the paving of said streets or portions thereof with the
material and in the manner set forth." As to the last-
named cause, the amended petition alleges that "the
rails required to be taken up are not suitable for the
paving provided for, and said paving could not be done
in a substantial manner without the removal of the old
rails and substitution of the ones provided for."

It is laid down generally "that the state, or its duly
authorized municipality, may require a street railway
company to do whatever is required for the health,
safety, and welfare of the community, for the authority
to enact measures for this purpose never passes from
the sovereign, no matter what grants it may make. It
must follow from this fundamental principle that all
corporations take their rights and privileges subject to
the general power which permanently resides in the
state;" also, that, when any regulation is prescribed by
the Legislature of the state, the courts can only inquire
whether it is constitutional, but, when it is prescribed
by a municipal corporation, the courts can also inquire
whether the regulation is a reasonable one.—Elliott on
Roads & Streets (2d Ed.) § 758, pp. 815, 816. It is also

9—172.

said that "it is a well-established general rule, however, that where an ordinance is based upon a general power, and its provisions are more specific than the expression of the power granted, the courts will inquire into its reasonableness, and hold invalid if clearly unreasonable; but the presumption is that such an ordinance is reasonable."—Idem, § 807, p. 878. Mr. Nellis, in his work on Street Surface Railroads, affirms the right and power of a municipal corporation to prescribe the manner in which the street shall be used, and, unless limited by statute or contract, to determine within reasonable bounds as to servants, appliances, etc., and says: "But it cannot require a railroad company to take up the rails long used in the streets with municipal consent and substitute others which the municipal authorities determine are more suited to the convenience and safety of the traveling public. It may, however, prohibit the use of a certain kind of rail in all future construction," etc.—Nellis on Street Surface Railroads, § 3, pp. 219, 220.

We have examined all of the authorities referred to by the author, except one, which is not a court of last resort, and do not find that this point was presented in either of them. Several of said cases hold that, where the charter powers of the city or the contract by which the railway company was permitted to use the streets did not authorize it, the city could not require two men, to wit, a conductor and a driver, to be on each car.—*Brooklyn Crosstown R. Co. v. City of Brooklyn*, 37 Hun (N. Y.) 413, 417; *City of Toronto v. Toronto Street Ry.*, 15 Ont. App. 30, 35. The case of *State, Trenton H. R. Co. v. Trenton*, 53 N. J. Law, 132, 20 Atl. 1076, 11 L. R. A. 410, held such an ordinance not on its face unreasonable, and that the burden was on the railway company to show that it was. Several others hold that where the railway charter was silent as to what

kind of rail was to be used, and the track was laid and
used for years with flat rails, the railway company
might afterward adopt the improved T-rails, provided
they were so laid as not to create a greater obstruction
to the use of the streets.—*Easton Pass. Ry. v. Easton,*
133 Pa. 505, 19 Atl. 486, 19 Am. St. Rep. 658. In the
case just cited the city declared the rails a nuisance,
and proceeded to tear them up. The master reported
that the T-rails did not interfere with travel on the
street, and the court, without passing upon that point,
held that the city should have proceeded by orderly
process, and not taken the law into its own hands, and
committed a trespass by tearing up the rails which had
been there in use.—Pages 518 et seq. of 133 Pa., 19 Atl.
486, 19 Am. St. Rep. 658.

In *Electric Railway Co. v. City of Grand Rapids,* 84
Mich. 257, 47 N. W. 567, the statute under which the
street railway company was organized and the ordi-
nance of the city conferred the right on the company
to traverse the streets and provided for iron poles in the
fire limits and wooden poles beyond the fire limits, and
it was held that the city could not afterward attach a
condition to the use of wooden poles that the company
should furnish transfers free of charge. The case of
*Western Saving Fund Society v. City of Philadelphia,*
31 Pa. 175, 72 Am. Dec. 730, simply decided that a city
could not violate its contract made with a gas company.
The case of *City of Waterloo v. Waterloo Street Rail-
way,* 71 Iowa, 193, 196, 32 N. W. 329, 330, where the
city had granted to the railway company the privilege
of constructing and operating a street railway over the
streets, without specifying what kind of rails was to be
used, decided that the city could not enjoin the railway
from using a certain kind of rails on the ground that it
would cause its track to be a nuisance, because the city

had full power to enforce its regulations, without an injunction the court saying: "The city council is vested, by law, with the power to determine the condition of repair in which the streets shall be kept. They have full control over the streets, and they may make any reasonable and necessary regulation as to the manner in which they shall be used. It does not appear to us that their powers in this respect are at all affected by the contract with the defendant. The city may require the defendant to so exercise the privileges conferred upon it by the grant as that the use of the street for ordinary purposes will not be unreasonably interfered with." Section 10 of article 14 of our Constitution of 1875, which is identical in this particular with section 238 of our present Constitution (and which really runs back to the Constitution of 1868), confers on the Legislature power "to alter, revoke or amend any charter of incorporation now existing, and revocable at the ratification of this Constitution, or any that may hereafter be created, whenever, in their opinion, it may be injurious to the citizens of the state; in such manner, however, that no injustice shall be done to the corporations."

The state of Iowa had a statute of similar import, and the city of Sioux City granted to a street railway company the right to build and operate a street railway over its streets, providing that, whenever any of its streets should be macadamized, said street railway company should macadamize between its tracks. Subsequently the Legislaure passed an act requiring all street railway companies to macadamize also to the extent of one foot outside the rails. The Supreme Court of the United States held this act valid, saying that "the company took its charter subject to the provision of that section," that "it was not in the power of the

city, by any contract with the company, to deprive the Legislature of the power of taxing the company;" that "the Legislature had the power not only to repeal and amend the articles of incorporation of the company, but to impose any conditions upon the enjoyment of its franchise which the General Assembly might deem necessary for the public good. The reservation of this power was a condition of the grant. The city council could make no arrangement with the company which would not be subject, under that section, to the superior power of the General Assembly."—*Sioux City Street Railway v. Sioux City*, 138 U. S. 98, 107, 11 Sup. Ct. 226, 229, 34 L. Ed. 898.

Counsel for appellee insists that in the *Sioux City Case* the Legislature had expressly reserved the right to repeal, alter, or amend the charter of such companies. Section 10, art. 14, of our Constitution of 1875, and section 238 of our present Constitution above cited, reserve the like power to the Legislature. Section 1374 of our Code of 1907 confers full power on municipal corporations in regard to paving and improving the streets, and section 1269 requires street railroads to use such rails as may be prescribed, and that "any public utility using the streets of the city or town shall at all times, in the manner prescribed by the council, render the use of such streets safe to vehicles and persons, and all tracks on such streets shall, when required by the council, be placed at any fixed grade, and changed, free of expense to the municipality, when found necessary." This court at an early day, in referring to section 1 of article 13 of the Constitution of 1868, said that the object and scope of it was "the prohibition of the grant of the corporate power to private corporations, except subject to repeal or amendment at the legislative will. Municipal corporations, mere governmental agencies,

were completely subject to legislative control. &ast; &ast; &ast;
Subjection of private corporations, to the same extent,
to legislative power, as if the power was expressly re-
served in each charter of incorporation, was the pur-
pose of the constitutional provision."—*Mayor of Mobile
v. Stonewall Insurance Co.,* 53 Ala. 570, 578-579. In a
case where a water company, under a contract with the
city, had located and placed its pipes, mains, and acque-
ducts in accordance with the city ordinance, and under
the supervision of the city engineer, it was held that
the city might afterwards require the same to be low-
ered; the court saying: "The city charter confers on
the municipal authorities power, and devolves the cor-
relative duty, to keep the streets in repair, safe and con-
venient for public use. That a contract surrendering
such power, and having the effect to disable the per-
formance of such duty, is invalid, seems too well estab-
lished to admit discussion. &ast; &ast; &ast; The city council
has no power, in the absence of legislative authority, to
make contracts or pass ordinances relinquishing or
abandoning the legislative or governmental powers or di-
vesting the corporation of its legislative discretion, or
disabling it to perform its public duties."—*City Council
of Montgomery v. Capital City Water Co.,* 92 Ala. 361,
363, 364, 9 South. 339, 340. The fact that the court in
that case refrained from passing upon the question as
to whether the city could in a proper proceeding be re-
quired to bear the expense of making the change does
not in the least militate against the principle so clearly
declared.

In the case of *Lindsay v. Mayor, etc., of Anniston,*
104 Ala. 257, 16 South. 545, 27 L. R. A. 436, 53 Am. St.
Rep. 44, it was contended that the ordinance prohibit-
ing hackmen or transfer men from entering the railway
station to solicit patronage, although they had been
given that special privilege by the railway company,

impaired the obligation of that contract, but this court
held that such contract, like all others, was made sub-
ject to the paramount power of the city to regulate such
business.

We hold that the result of these authorities is that
when any public utility uses the streets of a municipal-
ity, under any grant of authority, it takes the right,
subject to the paramount right of the municipality, to
grade and improve its streets, and to make such require-
ments and regulations as are necessary and reasonable
in order to make the streets suitable and convenient for
the use of the traveling public. As to whether the re-
quirements in this case are necessary and reasonable
must be determined when this case comes to be tried on
the merits.

The ordinance is presumed to be reasonable until the
contrary appears.—*Van Hook v. City of Selma,* 70 Ala.
361, 365, 45 Am. Rep. 85 *Gamble v. City of Montgomery,*
147 Ala. 682, 684, 39 South. 353. It is not denied that
there is a distinction between the legislative and the
contractural acts of a municipal corporation, and it can
no more than an individual violate its contract, but
these being the general principles involved, if there were
any contractural rights violated, the respondent should
have put in evidence the contract, in order that that
matter might be considered by the court. We cannot
presume, in the absence of evidence that there is a con-
tract which has ben violated.

The court erred in sustaining the demurrers to the
petition as amended.

The judgment of the court is reversed, and a judg-
ment will be here rendered, overruling the demurrers
to the petition as amended, and the cause is remanded.

Reversed, rendered, and remanded.

McCLELLAN, MAYFIELD, and SAYRE, JJ., concur.