(112 So. 742)

**CITY OF BIRMINGHAM et al. v. LOUISVILLE & N. R. CO.** (6 Div. 522.)

Supreme Court of Alabama. Dec. 9, 1926.

Rehearing Granted May 12, 1927.

**1. Municipal corporations** ⬤⟿122(2)—**Burden is on party attacking ordinance as unreasonable.**

Where attack is made on ordinance on ground that it is unreasonable, arbitrary, and oppressive burden is on pleader or attacking party.

**2. Municipal corporations** ⬤⟿63(2)—**Unreasonableness of ordinance is question for court.**

Where unreasonableness of city ordinance is asserted or urged, question thus made is to be decided by court.

**3. Municipal corporations** ⬤⟿63(2)—**Court will take relevant evidence on issue of unreasonableness of ordinance.**

In determining question whether city ordinance is unreasonable, court will take relevant evidence to advise its judgment on such issue.

**4. Municipal corporations** ⬤⟿63(2)—**Unreasonableness of ordinance must be demonstrably shown to justify annulment.**

To justify court in annulling ordinance on ground that it is unreasonable, it must be demonstrably shown that ordinance is unreasonable.

**5. Eminent domain** ⬤⟿2(8)—**Statute authorizing elimination of grade crossings in city is not invalid as taking property for public use without compensation (Code 1923, §§ 2070, 2072, et seq.).**

Code 1923, §§ 2070, 2072, et seq., authorizing city to require railroad to eliminate grade crossings, held not unconstitutional as taking private property for public use without compensation.

**6. Constitutional law** ⬤⟿241—**Statute authorizing city to require elimination of grade crossings is not invalid as denying equal protection (Code 1923, §§ 2070, 2072, et seq.).**

Code 1923, §§ 2070, 2072, et seq., authorizing city to require railroad to eliminate grade crossings, held not unconstitutional as denial of equal protection of law.

**7. Constitutional law** ⬤⟿133—**Statute authorizing city to require elimination of grade crossing is not invalid as impairing obligation of contracts (Code 1923, §§ 2070, 2072, et seq.).**

Code 1923, §§ 2070, 2072, et seq., authorizing city to require railroad to eliminate grade crossings, held not unconstitutional as impairing obligation of contracts.

**8. Railroads** ⬤⟿99(1)—**Ordinances requiring removal of railroad tracks to abolish grade crossings held unauthorized (Code 1923, §§ 2070–2072; Act 1911, p. 373).**

Ordinances requiring removal of railroad tracks to abolish grade crossings in city held not authorized by Code 1923, §§ 2070–2072, notwithstanding Act 1911, p. 373, though city may require bridge or viaduct over tracks or tunnel under tracks.

**9. Statutes** ⬤⟿225—**Statutes relative to railroad's elimination of grade crossings in cities must be considered in pari materia (Code 1923, §§ 2070–2072).**

Code 1923, §§ 2070–2072, dealing with question of city's authority to require railroad to construct viaducts, bridges, and tunnels to eliminate grade crossings, must be considered in pari materia.

Thomas, J., dissenting in part.

Appeal from Circuit Court, Jefferson County; William M. Walker, Judge.

Petition for appeal in equity by the Louisville & Nashville Railroad Company against the City of Birmingham and others. From a decree on demurrer to the petition, respondents appeal. Affirmed on rehearing.

W. J. Wynn and W. Marvin Woodall, both of Birmingham, for appellants.

The city commission was authorized to adopt the ordinances involved for the elimination of dangerous railroad crossing. American Tob. Co. v. Mo. Pac. R. Co., 247 Mo. 374, 157 S. W. 502; Southern R. Co. v. Morris, 143 Ala. 628, 42 So. 17, 19; State v. Great Northern R. Co., 130 Minn. 480, 153 N. W. 879,

---

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

L. R. A. 1918D, 1153; Acts 1915, p. 294, § 6; City of Birmingham v. L. & N. R. Co., 213 Ala. 92, 104 So. 258. The police power of the municipality to eliminate dangerous railroad crossings is continuing, and may be exercised as to crossings laid out either before or after the railroad is laid, and without regard to the financial burden upon the railroad. Erie R. Co. v. Board of Pub. Util. Comm., 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322; C., M. & St. P. R. Co. v. City of Minneapolis, 232 U. S. 430, 34 S. Ct. 400, 58 L. Ed. 671; Cleveland v. City Council, 102 Ga. 233, 29 S. E. 584, 43 L. R. A. 638; Southern R. Co. v. Morris, supra; Northern Pac. R. Co. v. Minn., 208 U. S. 583, 8 S. Ct. 341, 52 L. Ed. 630; Amer. Tob. Co. v. Mo. Pac. R. Co., supra. The action of the city commission being legislative, and the power being expressly granted, the courts have no voice in the matter of the expediency, necessity, reasonableness, or policy of the act. City of Birmingham v. L. & N., supra; Durham v. Southern R. Co., 185 N. C. 240, 117 S. E. 17, 35 A. L. R. 1313; 7 McQuillin Mun. Corp. §§ 724, 955; State ex rel. v. C., M. & St. P., 135 Minn. 277, 160 N. W. 773, L. R. A. 1917C, 1174; Birmingham Int. Tax. Corp. v. McLendon, 210 Ala. 525, 98 So. 578; Mo. Pac. R. Co. v. City of Omaha, 235 U. S. 121, 35 S. Ct. 82, 59 L. Ed. 157; Henderson v. City of Enterprise, 202 Ala. 277, 80 So. 115; Spencer v. Merchant, 125 U. S. 345, 8 S. Ct. 921, 31 L. Ed. 763; Code 1923, §§ 2070–2075; Lindsay v. City of Anniston, 104 Ala. 257, 16 So. 545, 27 L. R. A. 436, 53 Am. St. Rep. 44; 2 Dillon, Mun. Corp. (5th Ed.) 943; Dreyfus v. City of Montgomery, 4 Ala. App. 270, 58 So. 730; Ridgeway v. City of Bessemer, 9 Ala. App. 470, 64 So. 189; City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117; B. R. L. & P. v. Kyser, 203 Ala. 121, 82 So. 151; Herbert v. Demopolis, etc., 197 Ala. 617, 73 So. 321. Where a statute violates neither the state nor federal Constitution, the courts cannot declare it unreasonable or oppressive. 36 Cyc. 971; McNeil v. Webeking, 66 Fla. 407, 63 So. 728; Ex parte Birmingham, 199 Ala. 9, 74 So. 51; Ex parte Lambert, 52 Ala. 79; Bouchelle v. State Highway Comm., 211 Ala. 474, 100 So. 884; Ala. Int. P. Co. v. Mt. Vernon Co., 186 Ala. 622, 65 So. 287; State v. Skeggs, 154 Ala. 249, 46 So. 268. The burden is upon the party attacking an ordinance to show unreasonableness or oppressiveness. Briggs v. B. R. L. & P. Co., 188 Ala. 262, 66 So. 95. The aspects of the petition to which demurrer was sustained by the trial court are not before this court for any purpose; no appeal having been taken or cross-errors assigned by appellee. Pollak v. Stouts Mountain Coal Co., 184 Ala. 331, 63 So. 531; Sandlin v. Anders, 210 Ala. 396, 98 So. 299. The Act of 1911, p. 374, does not repeal or amend section 2070 et seq. of the Code 1923; the powers thereby given are merely cumulative. Schmidt v. City of Milwaukee, 149 Wis. 367, 135 N. W. 883; Cloverdale Homes v. Cloverdale, 182 Ala. 419, 62 So. 712, 47 L. R. A. (N. S.) 607.

Stokely, Scrivner, Dominick & Smith and McClellan, Rice & Stone, all of Birmingham, and Jones & Thomas, of Montgomery, for appellee.

Where the equity of the bill rests upon several separate and distinct grounds, a demurrer to the bill as a whole for the want of equity should be overruled, if any one of said grounds contains equity. Robinson v. Griffin, 173 Ala. 372, 56 So. 124; Jones v. Barker, 163 Ala. 632, 50 So. 890; Beall v. Lehman, Durr Co., 110 Ala. 446, 18 So. 230. Since the tracks were built at the points in question before Birmingham became a city and before the streets were laid out across said tracks, section 2070 of the Code is not to be interpreted as applying to such a case. 33 Cyc. 270, 285; Albia v. Chicago R. Co., 102 Iowa, 624, 71 N. W. 541; O'Fallon v. Ohio R. Co., 45 Ill. App. 572; Northern Cent. v. Baltimore, 46 Md. 425; State v. Wilmington R. Co., 74 N. C. 143; Prairie County v. Fink, 65 Ark. 492, 47 S. W. 301; Rock Creek Tp. v. St. Jos. R. Co., 43 Kan. 543, 23 P. 585. Said section 2070 has been amended so far as Birmingham is concerned. Acts 1911, p. 374. If section 2070 should be interpreted as applying where the city itself has created the crossing, it would be violative of section 235 of the Constitution. Birmingham Co. v. Birmingham Co., 119 Ala. 129, 24 So. 368; Ill. Cent. R. Co. v. Bloomington, 76 Ill. 447; State v. Shardlow, 43 Minn. 524, 46 N. W. 74; State v. Hennepin Co. Dist. Ct., 42 Minn. 247, 44 N. W. 7, 7 L. R. A. 21; Mass. R. Co. v. Boston R. Co., 121 Mass. 124; Chicago R. Co. v. Commrs., 49 Kan. 763, 31 P. 736. The enforcement of the ordinance in question would require the abandonment by the railroad company to the city of the surface of its right of way, without compensation to the railroad company. Niehaus v. Cooke, 134 Ala. 223, 32 So. 728; Montgomery v. Maddox, 89 Ala. 181, 7 So. 433; Avondale v. McFarland, 101 Ala. 381, 13 So. 504; Montgomery v. Lemle, 121 Ala. 609, 25 So. 919. The ordinance in question is invalid because neither section 2070 nor any other statute of the state confers upon the municipality the power or authority to pass an ordinance requiring railroad companies to eliminate grade crossings in the manner here attempted, by elevating their tracks. N. O. M. & C. v. Dunn, 51 Ala. 129; B. & P. M. v. B. S. R. Co., 79 Ala. 467, 58 Am. Rep. 615; Cleveland School Fur. Co. v. Greenville, 146 Ala. 559, 41 So. 862; 19 R. C. L. 800; 28 Cyc. 260, 275; Cent. Vt. R. Co. v. Royalton, 58 Vt. 234, 4 A. 868; Boston R. Co. v. Lawrence, 2 Allen (Mass.) 107; State ex rel. Indianapolis v. Ind. Union R. Co., 160 Ind. 45, 66 N. E. 163, 60 L. R. A. 831; 3 Elliott on R. R. (3d Ed.) 396; Newark v. Erie R. Co., 75 N. J. Eq. 20, 71 A.

620. The ordinance is invalid because unreasonable and oppressive. Briggs v. B. R. L. & P. Co., 188 Ala. 266, 66 So. 95; Oxanna v. Allen, 90 Ala. 468, 8 So. 79; Van Hook v. Selma, 70 Ala. 361, 45 Am. Rep. 85; Birmingham v. A. G. S., 98 Ala. 134, 13 So. 141; Standard Chem. Co. v. Troy, 201 Ala. 89, 77 So. 383, L. R. A. 1918C, 522; 2 Dillon Mun. Corp. (5th Ed.) 924; 28 Cyc. 368, 370, 727; Pittsburgh R. Co. v. Crown Point, 146 Ind. 421, 45 N. E. 587, 35 L. R. A. 684; Elliott, Mun. Corp. 198; Miller v. Birmingham, 151 Ala. 469, 44 So. 388, 125 Am. St. Rep. 31; Erie R. Co. v. Board, etc., 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322; American Tob. Co. v. Mo. Pac., 247 Mo. 374, 157 S. W. 502.

THOMAS, J. This is the second appeal. City of Birmingham v. L. & N. R. R. Co., 213 Ala. 92, 104 So. 258.

The questions presented arose in the attempt of the city of Birmingham to eliminate grade crossings used by companies operating railroads in a city of more than 35,000 population; and a further question is presented as to the nature and extent of the appeal provided to any court having chancery jurisdiction. Code 1923, §§ 2070–2075. The nature and extent of such trials in equity were touched upon on former appeal as follows:

"It was intended the proceeding should bear some analogy to appeals. Among the common incidents of appeals are these: A fixed right to thus test the legality of the matter assailed; the right, upon execution of a proper bond, to supersede or suspend the execution of the order or decree pending the appeal; and the right, upon a hearing, to vacate or restrain the execution of the order, if found invalid. These are the incidents we think the Legislature had in mind in styling the proceeding to test the validity of a legislative ordinance as 'an appeal.' It provides a cumulative remedy as of right and not of discretion. * * * We have outlined the procedure to perfect the appeal and the order made thereon in the case at bar as an approved precedent in such cases. In the further progress of the cause the petition is to be treated as in lieu of a bill of injunction, subject to the same rules as to amendment, demurrer, and answer." 213 Ala. 92, 94, 104 So. 258, 260.

There may be analogy in the construction given other statutes providing for appeals to a court of equity. Alabama Public Service Commission v. Mobile Gas Co., 213 Ala. 50, 104 So. 538, 41 A. L. R. 872.

After the former decision, the pending case in the circuit court in equity proceeded to a decree overruling grounds of demurrer of the city to the bill filed by the railroad company against that municipality, contesting the validity of the ordinances seeking to require the Louisville & Nashville Company and the Alabama Great Southern Railroad Company at their expense to eliminate grade crossings at the several streets in said city in the manner specifically indicated—by building trestles, bridges, etc., over the street. The tracks of the Louisville & Nashville Company are averred to cross at grade the several public streets in the city of Birmingham; the way of the railroad company long preceding the growth of the city and its present congested traffic.

The demurrer of respondent was directed to the bill as a whole, and grounds thereof limited or directed to certain specified aspects of the bill. The decree overruled the demurrer to the bill as a whole, and sustained certain specific grounds of demurrer, and overruled others. The effect of such a decree on demurrer was discussed in Pollak v. Stout's Mountain Co., 184 Ala. 331, 63 So. 531; s. c., 201 Ala. 700, 78 So. 990. This case was followed in Sandlin v. Anders, 210 Ala. 396, 400, 98 So. 299, 303, where it was said:

"A decree sustaining a demurrer to a part of a bill has the effect of striking that part. The complainant may thereupon so amend the part stricken as to give the bill equity in that regard, or he may by express amendment, eliminate the portion stricken by demurrer, or, if the bill still contains equity, may proceed thereon without amendment as if the defective feature had been stricken on motion."

[1] It is elementary that, when an attack is made upon an ordinance on the ground that it is unreasonable, arbitrary, and oppressive, the burden is upon the pleader or attacking party. Briggs v. B. R., L. & P. Co., 188 Ala. 262, 66 So. 95; Standard Chem. & Oil Co., 201 Ala. 89, 77 So. 383, L. R. A. 1918C, 522.

[2-4] And it should be said that the general rules in respect to review of ordinances for unreasonableness are well stated in Briggs v. B. R., L. & P. Co., 188 Ala. 262, 266, 66 So. 95, 96:

"Where an ordinance or by-law, assuming to exercise a power within the municipality's competency, is not void on its face, the legal presumption is that the ordinance or by-law is reasonable and valid until the contrary is shown by proper evidence. Bryan v. Mayor, etc., 154 Ala. 447, 452, 45 So. 922, 129 Am. St. Rep. 63; Marion v. Chandler, 6 Ala. 899, 902; Johnson v. Town of Fayette, 148 Ala. 497, 42 So. 621. When the unreasonableness vel non of an ordinance of by-law is asserted or urged, the question thus made is to be decided by the court, not the jury. Marion v. Chandler, supra; Johnson v. Town of Fayette, supra; 2 McQuillin on Munc. Corp. § 729; 2 Dillon, § 599; Evison v. Chicago R. R. Co., 45 Minn. 370, 48 N. W. 6, 11 L. R. A. 434. A qualification of this doctrine appears to have commended itself to the Supreme Court in A. & W. Tel. Co. v. Philadelphia, 190 U. S. 160, 166, 23 S. Ct. 817, 47 L. Ed. 995; but the conclusion, in this respect, of our cases, as well as the texts cited above, seem to us to afford the sounder, more practical rule, and will be adhered to. The court having the question to determine will take relevant evidence to advise its judgment upon the issue of unreasonableness

vel non. 2 Dillon, § 599; Marion v. Chandler, supra; Van Hook v. Selma, 70 Ala. 361, 365, 45 Am. Rep. 85; 2 McQuillin, § 729. In order to justify the court in annulling an ordinance or by-law on the ground that it is unreasonable it must be 'demonstrably shown' that it is un-reasonable; 'equipoise of opinion' on the matter will not warrant the setting aside of the ordinance of by-law on the ground of unreasonableness. Marion v. Chandler, 6 Ala. 899, 902."

The rules declared have been adhered to in the later decisions of this court. Standard Chem. Co. v. Troy, 201 Ala. 89, 77 So. 383, L. R. A. 1918C, 522; B. R. L. & P. Co. v. Kyser, 203 Ala. 121, 82 So. 151; Giglio v. Barrett, 207 Ala. 278, 92 So. 668.

The authority of a municipality in the exercise of the police power under the law is ample for the enforcement of the continuous duty resting upon railroad companies and persons in the construction and maintenance of their ways in or across public highways and streets of municipalities. Southern Ry. Co. v. Morris, 143 Ala. 628, 630, 42 So. 17; Sands v. L. & N. R. R. Co., 156 Ala. 323, 329, 47 So. 323. The extent of the police power conferred by the charter of cities (article 27, Code 1923, §§ 2070-2075; City of Birmingham v. L. & N. Co., 213 Ala. 92, 104 So. 258) has been adverted to by this court and the Supreme Court of the United States (N. P. Ry. Co. v. State of Minnesota, 208 U. S. 583, 28 S. Ct. 341, 52 L. Ed. 630; Chicago, M. & St. P. R. R. Co. v. City of Minneapolis, 232 U. S. 434, 34 S. Ct. 400, 58 L. Ed. 671).

In the last-cited case the authorities are collected, and the opinion, by Mr. Justice Hughes, declared:

"It is well settled that railroad corporations may be required, at their own expense, not only to abolish existing grade crossings but also to build and maintain suitable bridges or viaducts to carry highways, newly laid out, over their tracks or to carry their tracks over such highways."

The decision in State ex rel. Minneapolis v. St. Paul, M. & M. R. Co., 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. Rep. 581, was quoted with approval by the justice in that case (Chicago, etc., Co. v. City of Minneapolis, supra), saying:

"'A railroad company receives its charter and franchise subject to the implied right of the state to establish and open such streets and highways over and across its right of way as public convenience and necessity may from time to time require. That right on the part of the state attaches by implication of law to the franchise of the railroad company, and imposes upon it an obligation to construct and maintain at its own expense suitable crossings at new streets and highways to the same extent as required by the rules of the common law at streets and highways in existence when the railroad was constructed.' In that case, it appeared that long after the construction of the railroad, the city of Minneapolis had laid out a street across the railroad right of way,

building at its own cost a bridge over the railroad tracks. After the bridge had been maintained for several years by the city it was destroyed by fire, and the city then demanded that the railroad company should build a new one. This demand the state court sustained; and, mandamus having thereupon been awarded (101 Minn. 545 [112 N. W. 1142]), the case was brought to this court, one of the grounds being that the action of the state deprived the company of its property without due process of law. The judgment was affirmed (St. Paul, M. & M. R. Co. v. Minnesota, 214 U. S. 497 [53 L. Ed. 1060, 29 S. Ct. 698]), this conclusion being reached upon the authority of Northern P. R. Co. v. Duluth, 208 U. S. 583 [28 S. Ct. 341, 52 L. Ed. 630]."

The case of C., I. & W. R. Co. v. Connersville, 218 U. S. 336, 31 S. Ct. 93, 54 L. Ed. 1060, 20 Ann. Cas. 1206, was likewise referred to as being a case where the city was extended and intersecting streets laid out along an existing railway; and it was held that there was no violation of the Fourteenth Amendment in refusing to allow the company to be reimbursed for the expense for the new and required improvement; and the rights in the premises were said to be "concluded by former decisions" of the Supreme Court of the United States. The subject is concluded by Mr. Justice Hughes as follows:

" * * * It necessarily follows that, if the city of Minneapolis had opened a public road through the embankment of the plaintiff in error, the latter would have had no ground to complain that its constitutional rights had been violated because it was compelled to bridge the gap at its own cost. No different rule could be applied because the highway was laid out in order to increase the advantages of a public park. In this aspect, it would be equally a crossing devoted to the public use (Shoemaker v. United States, 147 U. S. 282, 297 [13 S. Ct. 361, 37 L. Ed. 170, 184]); and we see no basis for a distinction in principle in the case of an intersecting public road opened under competent authority because such a highway might lead to public recreation grounds instead of to places of business, or might connect lakes instead of avenues." Chicago, M. & St. P. R. Co. v. City of Minneapolis, 232 U. S. 430, 441, 34 S. Ct. 400, 402, 58 L. Ed. 671, 675.

The action of a municipality in deciding the necessity for and ordering that specified grade crossings be eliminated by the reasonable means duly indicated by ordinance under authority of statute is the province and policy of its duly constituted legislative body, and the courts have no voice in the determination of that necessity. That is, the question of the wisdom and public necessity for the same is, under sections 2070, 2072, Code of 1923, for the decision of the legislative body of the city of Birmingham in the exercise of the prerogative of the sovereign and police power. City of Birmingham v. L. & N. R. R. Co., 213 Ala. 92, 104 So. 258; Her-

bert v. Demopolis, 197 Ala. 617, 73 So. 321; B. I. Tax. Serv. Corp. v. McLendon, 210 Ala. 525, 98 So. 578; McLendon v. Boyles Trans. Co., 210 Ala. 529, 98 So. 581; Cloe v. State, 209 Ala. 544, 96 So. 704; Giglio v. Barrett, 207 Ala. 278, 92 So. 668; Henderson v. Enterprise, 202 Ala. 277, 80 So. 115; B. R. L. & P. Co. v. Kyser, 203 Ala. 121, 82 So. 151; Montgomery v. Orpheum Taxi Co., 203 Ala. 107, 82 So. 117. The foregoing authorities are largely predicated upon Lindsay v. Mayor, 104 Ala. 261, 263, 16 So. 545, 546 (27 L. R. A. 436, 53 Am. St. Rep. 44) where the observation is made that an ordinance imposing a license tax and to regulate hacks, etc., was in nature and essence a police regulation, and that its "policy or reasonableness" could not be inquired into. Mr. Chief Justice Brickell there said, of the exercise of such power:

"The power may be, and is often delegated to municipal corporations, to be exercised for the promotion of the public convenience. When the power has been delegated in terms of the character employed in the amended charter, the validity of ordinances, prescribing the times, places and manner in which the employment is to be pursued, has been uniformly sustained. Com. v. Stodder, 2 Cush. 562; s. c., 48 Am. Dec. 679; City of St. Paul v. Smith, 27 Minn. 364 [7 N. W. 734]; s. c., 38 Am. Rep. 296; Veneman v. Jones, 118 Ind. 41 [20 N. E. 644]; s. c., 10 Am. St. Rep. 100. Such ordinances are in their nature and essence police laws or regulations, and when adopted in the exercise of an express legislative grant of power, there can be no inquiry into or discussion of their policy or reasonableness. 'What the Legislature says may be done, cannot be set aside by the courts, because they may deem it unreasonable or against sound policy.' 1 Dillon, Mun. Corp. § 328."

And upon that authority (104 Ala. 261, 16 So. 545), in City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117, it was said that, where there is express legislative grant, within constitutional limitation, of power to a municipality to ordain the ordinance expressive of that power, it cannot be inquired into with respect to its policy or reasonableness.

Adverting to the decisions of the Supreme Court of the United States as to certain constitutional objections that have been urged against such statutes or ordinances, it is declared, through Mr. Justice Holmes, in Erie Railroad Co. v. Board of Pub. U. Com., 254 U. S. 394, 410, 41 S. Ct. 169, 171, 65 L. Ed. 322, 334, that a state may, without offense to the due process of law, commerce, and contract clauses of the Constitution, require a railway corporation engaged in interstate commerce to abolish, at its own expense, and without regard to financial ability, highway grade crossings, including those at streets laid out after the railway was built, "if it reasonably can be said that safety requires the change it is for them to say

whether they insist upon it," and financial outlay or engagement in interstate commerce cannot take away this fundamental right of the sovereign of the soil. Denver & R. G. R. Co. v. Denver, 250 U. S. 241, 246, 39 S. Ct. 450, 63 L. Ed. 958, 962.

[5-7] It follows that, since the duty of a railroad company to keep its crossings is continuous (Southern Ry. Co. v. Morris, 143 Ala. 628 et seq. 42 So. 17), such operating company or individual may be properly required by the state or its delegated municipalities, without regard to whether the street or highway became such public thoroughfare before or subsequent to the building of the railway, to maintain crossings and approaches, to eliminate grade crossings, etc. Erie R. Co. v. Board of Pub. U. Com., 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322, 333; State v. St. P., M., etc., Co., 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (N. S.) 298, 120 Am. St. Rep. 581; s. c., 214 U. S. 497, 29 S. Ct. 698, 53 L. Ed. 1060; N. P. R. Co. v. State of Minnesota ex rel. Duluth, 208 U. S. 583, 28 S. Ct. 341, 52 L. Ed. 630, 636.

The foregoing result is held not offensive to organic law, as the taking of private property for public use without compensation, or the denial of the equal protection of the law, or that against the impairment of the obligations of a contract. Such are our decisions. Lindsay v. Mayor, 104 Ala. 257, 16 So. 545, 27 L. R. A. 436, 53 Am. St. Rep. 44; State ex rel. City of Gadsden v. Ala. City, G. & A. R. Co., 172 Ala. 125, 135, 55 So. 176, Ann. Cas. 1913D, 696; Patterson v. S. & N. R. Co., 89 Ala. 318, 7 So. 437; Southern Ry. Co. v. Posey, 124 Ala. 486, 26 So. 914; Southern Ry. Co. v. Morris, Adm'r, 143 Ala. 628, 42 So. 17; N. C. & St. L. R. Co. v. Ragan, 167 Ala. 277, 52 So. 522; Southern Ry. Co. v. Flynt, 203 Ala. 65, 82 So. 25. The cases of Pratt Co. v. Davis, 79 Ala. 308, S. & N. R. Co. v. McLendon, 63 Ala. 266, by Mr. Chief Justice Stone, and Southern Ry. Co. v. Posey, supra, use the expression that the owner of a railroad operating it across a public road is under the legal duty of maintaining the crossing in a condition reasonably safe and convenient for use by those traveling the public road. And the duty of maintenance of such crossing in a proper condition is unaffected by whether or not the street or public highway was created or constructed before or after the building of the railroad. This is the declared public policy of the state. Code 1923, §§ 2017, 2020, 2189; State ex rel. Gadsden v. Ala. City, G. & A. R. Co., 172 Ala. 125, 135, 55 So. 176, Ann. Cas. 1913D, 696.

The authority of the commission as the legislative body of the city of Birmingham in its legislative capacity and in the exercise of the police power to adopt proper ordinances to eliminate dangerous grade crossings is as ample as that of the state; that is to say, the authority sought to be exercised by the instant ordinances, to the end of

the elimination of railroad street crossings, in the populous sections of Birmingham, is ample. The court takes judicial knowledge of the ordinances of said city, and they are considered to the one end in view. Gen. Acts 1915, p. 294, §§ 6, 7; Southern Ry. Co. v. Cates, 211 Ala. 282, 100 So. 356; Barrett v. Riatta, 207 Ala. 651, 93 So. 636; City Cleaning Co. v. Birmingham W. Co., 204 Ala. 51, 85 So. 291. It is provided in article 27 of the Code of 1923, §§ 2070, 2072, that municipalities of the class indicated may require and shall have full power and authority to require railroad companies to construct and maintain, within the city limits, viaducts, bridges, and tunnels, or parts of viaducts, bridges, and tunnels, and their approaches, over, along, or under the tracks, at their own expense; that is, provides by section 2070 that such cities shall have full power and authority to require railroad companies to construct and maintain, within the city limits, "such bridges and their approaches, tunnels, or other conveniences at public crossings, and such viaducts, and their approaches over their tracks where the same cross or extend along public highways or streets." Section 2072 provides as follows:

"Whenever any such governing body shall deem any such improvement necessary, it shall pass an ordinance requiring the construction of such improvement, describing the character and location of such proposed improvement with reasonable certainty, and stating the estimated cost thereof, and fixing a reasonable time for the construction of the same; and where a viaduct, bridge or tunnel crosses over or passes under the tracks of two or more railroad companies, and such railroad companies cannot themselves agree upon the division as between them, of the cost thereof to be borne by them, as provided in section 2070 (1296), the said governing body shall have full power and authority to apportion the cost thereof, equitably, among the different railroads owning the said tracks."

The right of appeal by the railroad from such order or ordinance requiring bridges, tunnels, viaducts, etc., is provided by section 2075 of the Code of 1923, which was considered on former appeal. 213 Ala. 92, 104 So. 258. The legislative power in the premises was sought to be exercised under the statute. The powers contained in the General Acts of 1911, p. 374, are merely cumulative of the powers contained in the general statute (Walker v. Birmingham C. & I. Co., 184 Ala. 425, 63 So. 1012; Cloverdale Homes v. Town of Cloverdale, 182 Ala. 419, 62 So. 712, 47 L. R. A. [N. S.] 607) in cities of the class and matter indicated.

A better understanding of the unanimity of decisions as to the power contained in the several statutes having application will be afforded by the general decisions, state and federal, touching the right of municipalities, by proper ordinances, to require such public service corporations using grade crossings in cities to eliminate the same, collected in 28 L. R. A. (N. S.) 298, note, and 35 A. L. R. p. 1322. In 35 A. L. R. supra, it is stated:

"The power of municipalities to eliminate grade crossings, either through express statutory authority, or by implication from other delegated powers, or the general police power, is recognized in the following cases: United States: Missouri P. R. Co. v. Omaha (1912) 197 F. 516, 117 C. C. A. 12, decree affirmed in (1914) 235 U. S. 121, 35 S. Ct. 82, 59 L. Ed. 157; Chicago v. New York, C. & St. L. R. Co. (1914) 216 F. 735, 132 C. C. A. 645; Chicago, M. & St. P. R. Co. v. Minneapolis ([D. C.] 1916) 238 F. 384."

The case of Missouri P. R. Co. v. Omaha, 235 U. S. 121, 35 S. Ct. 82, 59 L. Ed. 157, held:

"A railway company may, consistently with due process of law, be required by the state, or by a duly authorized municipality acting under its authority, to construct overhead crossings or viaducts at its own expense, the consequent cost to the company being, as a matter of law, damnum absque injuria, or deemed to be compensated by the public benefit which the company is supposed to share.

"Courts cannot interfere with the exercise of the police power by enjoining regulations in the interest of the public safety which the Legislature has duly enacted, provided the means employed have a substantial relation to the purpose to be accomplished and there is no arbitrary interference with private rights.

"The entire cost of constructing a viaduct over the tracks of a railway company at a street crossing may, consistently with due process of law, be imposed upon the railway company by a duly authorized municipality acting under state authority, although the structure ordered by the city, being designed to carry the tracks of a street railway company operating in such street, will cost considerably more than a viaduct sufficient to carry the ordinary street traffic."

The later case of Denver & Rio Grande R. Co. v. Denver, 250 U. S. 241, 243, 245, 39 S. Ct. 450, 451, 63 L. Ed. 958, 961, declares:

"The track in Wynkoop street has been there since 1871, and we shall assume, as did the supreme court of the state, that it was put there in virtue of some ordinance of that period, and that the ordinance became a contract and the right granted became a vested property right. But, as this court often has held, such contracts and rights are held subject to the fair exercise by the state, or the municipality as its agent, of the power to adopt and enforce such regulations as are reasonably necessary to secure the public safety; for this power 'is inalienable even by express grant,' and its legitimate exertion contravenes neither the contract clause of the Constitution nor the due process clause of the 14th Amendment. Atlantic Coast Line R. Co. v. Goldsboro, 232 U. S. 548, 558, 34 S. Ct. 364, 58 L. Ed. 721, 726; Chicago & A. R. Co. v. Tranbarger, 238 U. S. 67, 76, 35 S. Ct. 678, 59 L. Ed. 1204, 1210. Of course, all regulations of this class are subject to judicial scrutiny, and where they are found to be plainly unreasonable and arbi-

trary must be pronounced invalid as transcending that power and falling within the condemnation of one or both, as the case may be, of those constitutional restrictions.

"The scope of the power and instances of its application are shown in the decisions sustaining regulations (a) requiring railroad companies at their own expense to abrogate grade crossings by elevating or depressing their tracks and putting in bridges or viaducts at public crossings (Northern P. R. Co. v. Duluth, 208 U. S. 583, 28 S. Ct. 341, 52 L. Ed. 630; Chicago. M. & St. P. R. Co. v. Minneapolis, 232 U. S. 430, 34 S. Ct. 400, 58 L. Ed. 671; Missouri P. R. Co. v. Omaha, 235 U. S. 121, 35 S. Ct. 82, 59 L. Ed. 157), (b) requiring a railroad company at its own cost to change the location of a track and also to elevate it as a means of making travel on a highway safe (New York & N. E. R. Co. v. Bristol, 151 U. S. 556, 14 S. Ct. 437, 38 L. Ed. 269), (c) prohibiting a railroad company from laying more than a single track in a narrow, busy street, although its franchise authorized it to lay a double track there (Baltimore v. Baltimore Trust & G. Co., 166 U. S. 673, 41 L. Ed. 1160, 17 S. Ct. 696), and (d) requiring a gas company whose mains and pipes were laid beneath the surface of a street under an existing franchise to shift them to another location at its own ,cost to make room for a public drainage system. New Orleans Gaslight Co. v. Drainage Commission, 197 U. S. 453, 25 S. Ct. 471, 49 L. Ed. 831."

The field of inquiry, indicated to be for the courts, under the federal decisions, is that pointed out by Mr. Justice Van De Vanter in the Denver Case, supra: Are the ordinances in question "plainly unreasonable and arbitrary?" He illustrates that inquiry of fact in his observations:

"The crossing is practically the gateway to the city. Persons in large numbers pass over it every day—many of them unacquainted with the surroundings. Moving engines and cars to and fro over such a place makes it one of danger. Any one of several forms of corrective regulation might be applied. To illustrate: The city might call on the railroad company to construct and maintain a viaduct over the crossing or a tunnel under it; or might lay on the company the duty of maintaining watchmen or flagmen at the crossing. What it actually does by the ordinance is to call on the company to remove the track from the crossing and avail itself of other accessible and fairly convenient means of getting cars to and from its track east of the crossing. No doubt in this the company will experience some disadvantages, but they will be far less burdensome than would be the construction and maintenance of a viaduct or tunnel, and not much more so than would be the keeping of watchmen or flagmen at the crossing.

"The situation is unusual and the ordinance deals with it in a rather practical way. Giving effect to all that appears, we are unable to say that what is required is plainly unreasonable and arbitrary."

In City of Durham v. Southern Ry. Co., 185 N. C. 240, 117 S. E. 17, 35 A. L. R. 1313, the ordinance for the elimination of grade crossings was upheld by the Supreme Court of North Carolina, and affirmed by the Supreme Court of the United States. Southern Ry. Co. v. City of Durham, N. C., 266 U. S. 178, 45 S. Ct. 51, 69 L. Ed. 231. It had been declared by the Supreme Court of North Carolina that the city had exclusive control of its streets, and the question of eliminating grade crossings "in the first instance was one for the local authorities"; that is, for the determination by those authorities whether the "public necessity requires a separation of crossing grades" and the method of accomplishing it—"whether by compelling the railroad (1) to depress its tracks and carry the street over," or (2) by raising its tracks and carrying the same over the present grade of the street. In the decisions of these legislative questions the ordinance was held a proper exercise of the police power and authority conferred "in the city's charter and the several statutes applicable." The Supreme Court of the United States stated the issues of fact raised by the pleadings, and treated the questions presented by the appeal in short as follows:

"Having heard the cause upon complaint, answers and argument of counsel the trial court, 'being of the opinion that no issue of fact for trial by jury is raised upon the pleadings,' made findings of fact, declared the ordinance valid and directed compliance therewith. The railroads offered no evidence, but asked continuation of the cause until the next term and that no further proceedings should be taken until the issues of fact raised by the answers could be decided by a jury. This was denied and they appealed. The Supreme Court held refusal to continue the hearing and transfer the cause to the civil docket for trial by jury was not erroneous, and said that 'the judge was ready to hear and determine the action but the railroads failed to offer testimony or evidence of any kind whatever.'

"We are unable to find that plaintiffs in error have been deprived of any federal right. They had full opportunity to present evidence to support their contentions in the trial court, but offered none."

The city, in that case, had filed a petition for mandamus to compel compliance with the ordinance, and the Southern Railway Company answered, attacking "the ordinance as arbitrary, unreasonable and subversive of rights guaranteed by the Fourteenth Amendment; also because it conflicted with the federal act to regulate commerce (U. S. Comp. St. § 8563 et seq.) by imposing undue expense upon them. The facts relied upon to support these claims were specified."

In the case of A. T. Co. v. Mo. P. R. Co., 247 Mo. 374, 157 S. W. 502, the expediency or public necessity for the action pursuant to the ordinance was held to be a question exclusively for the legislative department of the municipality; and that action was conclusive upon the public and individuals affected, and beyond the inquiry of the courts

—if not plainly unreasonable and arbitrary in the manner to be executed or the means required to be employed. This is the effect of the due exercise of legislative discretion or express legislative grant of right of use of the public highways. Birmingham Co. v. McLendon, 210 Ala. 525, 98 So. 578; McLendon v. Boyles Co., 210 Ala. 529, 98 So. 581; B. R., L. & P. Co. v. Milbrat, 201 Ala. 368, 78 So. 224; B. R., L. & P. Co. v. Kyser, 203 Ala. 121, 82 So. 151; City of Montgomery v. Orpheum Taxi Co., 203 Ala. 103, 82 So. 117; Henderson v. City of Enterprise, 202 Ala. 277, 80 So. 115; Lindsay v. Mayor, 104 Ala. 257, 16 So. 545, 27 L. R. A. 436; 53 Am. St. Rep. 44; Herbert v. Demopolis, 197 Ala. 617, 73 So. 321.

This is the effect of the decisions of the Supreme Court of the United States when the action required as to manner and means is not plainly unreasonable and arbitrary. Mo. P. R. Co. v. Omaha, 235 U. S. 121, 35 S. Ct. 82, 59 L. Ed. 157; Denver & Rio Grande R. Co. v. Denver, 250 U. S. 241, 39 S. Ct. 450, 63 L. Ed. 958, 961.

At the risk of repetition, we will say that the courts have no right to pass upon the question of reasonable necessity for the construction of bridges, viaducts, etc., to eliminate grade crossings within the municipality at the streets indicated; and the provisions of sections 2070, 2072 et seq., of the Code of 1923, are free, as we have seen, from constitutional objection. If the manner and time of the discharge of the required duty by the railroad company—dependent on the facts, requisitions, and materials to be employed and time specified—is found by the courts as having no substantial relation to the purpose to be accomplished, or to be plainly unreasonable and arbitrary, under the ordinance as administered, it will be declared violative of vested private rights. See authorities in State v. Goldstein, 207 Ala. 574, 575;[1] City of Mobile v. Orr, 181 Ala. 308, 61 So. 920, 45 L. R. A. (N. S.) 575; Yick Wo v. Hopkins, 118 U. S. 356, 30 L. Ed. 220.[2] On the other hand, if the due administration of the ordinance is not plainly unreasonable and arbitrary, or has a substantial relation to the purpose to be accomplished, in its effect upon the rights and properties of the Company, the sovereign or its duly authorized municipal agent or instrumentality will be upheld in the right exercise and discharge of police power, for the protection of the general public. It is in subordination to this that franchises to public service corporations are granted and upheld. B. R., L. & P. Co. v. Littleton, 201 Ala. 141, 145, 146, 77 So. 565. And this department of state government has nothing to do with the wisdom of statutes not offensive to organic law. The question of public policy in regard to statutes

is with the legislative department of government. Ex parte Lambert, 52 Ala. 79; Bouchelle v. State High. Com., 211 Ala. 474, 100 So. 884; Ala. Co. v. Mt. Vernon Co., 186 Ala. 622, 65 So. 287; Ex parte City of Birmingham, 199 Ala. 9, 74 So. 51; State ex rel. Woodward v. Skeggs, 154 Ala. 249, 46 So. 268.

The fact that the city has not acquired from abutting property owners the right to change the grade of the street is no reason why a proper ordinance may not be passed by the municipality. Due regard may be had for the provisions of section 2071 of the Code before construction of the proposed improvements may be had, if such be required for the protection of the rights of abutting owners. Section 235 of the Constitution; South. Ry. Co. v. Ables, 153 Ala. 523, 45 So. 234. The provisions of sections 7532 and 7533 of the Code confer that right of condemnation for such purposes upon appellees. A reasonable time within which to comply is required by the ordinance, and such fact and necessity of required condemnation would be taken into consideration.

Adverting to the ruling on demurrer to the bill as a whole, and to that challenging specific aspects thereof, it should be said that, of the cases cited by appellant, Hood v. Southern Ry. Co., 133 Ala. 374, 31 So. 937, was to the effect that an appeal does not lie from an interlocutory decree on motion to strike parts of the bill. Such is not the case before us as to ruling on demurrer. And in Truss v. B. La G. & M. R. Co., 96 Ala. 316, 11 So. 454, the question was whether appeal would lie from an order setting aside judgment by default; and it was held the order was not appealable. The cases of Pollak v. S. M. C. Co., 184 Ala. 331, 63 So. 531, and Sandlin v. Anders, 210 Ala. 396, 98 So. 299, are to the effect that appellants are permitted to assign error as to ruling on demurrer and grounds thereof addressed separately to the facts or aspects of the bill.

The several demurrers or grounds thereof present: (1) The aspect of the petition alleging lack of public necessity. This is legislative, and not for review by the courts. (2) The aspect of the petition alleging unreasonableness and arbitrariness. This is the subject of an inquiry of fact presented by the bill as a whole. The ruling on demurrer or grounds thereof should be made to conform thereto.

We have indicated there was no error in overruling demurrer to the bill as a whole; that there was error in sustaining demurrer to the phases of the bill to the end that the governing body of the city in adopting the ordinance failed to exercise a reasonable or proper discretion in determining that the public necessity required the elimination of the grade crossings in question; and that there was no error in sustaining demurrer

[1] 93 So. 308.
[2] 6 S. Ct. 1064.

challenging that phase of the bill directed to the ordinance adopted as being unreasonable, arbitrary, and oppressive in the requirements of the time, extent, material, or agencies to be employed in the elimination of said grade crossings.

The cases cited by appellant are addressed to rulings on demurrer challenging the right to maintain the bill as containing equity. Jones v. Barker, 163 Ala. 632, 50 So. 890; Beall v. Lehman-Durr Co., 110 Ala. 446, 18 So. 230; Ship v. Furnis, 69 Ala. 555. The case of Tillman v. Thomas, 87 Ala. 321, 6 So. 151, 13 Am. St. Rep. 42, held that a demurrer to a bill on the ground that there was an adequate legal remedy is properly overruled, when the legal remedy is inadequate as to only one of the two aspects in which the bill is filed. These authorities do not reach the instant pleadings and decree thereon overruling demurrer to paragraph G of section 30.

The question of fact whether the ordinances are "plainly unreasonable and arbitrary" in the specifications submitted and required and the means employed, as having or not having a substantial relation to the purposes to be accomplished and the time of execution or compliance therewith, will be determined on the coming in of all the evidence in support or denial of such litigable facts indicated by the federal cases. Erie Co. v. Board, 254 U. S. 394, 41 S. Ct. 169, 65 L. Ed. 322; Denver & R. G. R. Co. v. Denver, 250 U. S. 241, 39 S. Ct..450, 63 L. Ed. 961; Mo. P. R. Co. v. Omaha, 235 U. S. 121, 35 S. Ct. 82, 59 L. Ed. 157, and authorities collected in these cases.

In view of the delegation by the Legislature to the municipality of the full power and authority to require railroad companies to construct, etc., viaducts, bridges, and tunnels or parts of " * * * over, along or under the tracks at their own expense," I cannot concur in the construction given the statute by the majority that the power conferred upon the municipality by section 2070 et seq., Code, did not authorize any due change in the grade of the tracks of the railroad companies reasonably necessary to the elimination of grade crossings, for the safeguarding and protecting of those of the general public of the city at and upon said street crossings, having the superior right of the use of same. The statute does not limit the action of the city merely to that of a change of the grade of its streets and sidewalks, as is the expressed view of the majority. The statute is comprehensive, and gave authority to duly affect the whole subject-matter, having a right regard to the end in view—the elimination of unnecessary dangers and hazards at popular street crossings. To this end the municipality may reasonably require, under the statute, the elevation or depression of the grade of the streets and sidewalks, or that of the tracks of the railroad companies, either or both, in whole or in part, at and approaching said crossing and necessary to the elimination of said grade crossing.

The majority, Justices SAYRE, SOMERVILLE, MILLER, and BOULDIN, concurs in my treatment of the constitutional questions presented and argued. However, the majority view as to the effect of the statute and validity of the ordinance thereunder is not in accord with my construction expressed thereof, and it is stated by the CHIEF JUSTICE as follows:

ANDERSON, C. J. (for the majority). [8, 9] While in accord with the views as expressed in the foregoing opinion of Justice THOMAS as to the constitutional right of municipalities, when the authority is properly delegated by the Legislature, we do not agree with him as to the validity of the ordinances in question. The ordinances require the elevation of the tracks of the railroads over the respective streets dealt with by the construction of bridges over said streets and the removal of the railroad tracks so as to run over the streets, and in effect require what may be termed an elevated railroad through a considerable section of the city. We are of the opinion, and so hold, that said ordinances are not authorized by the statute, and are therefore invalid. Sections 2070, 2071, and 2072 of the Code of 1923, in dealing with the questions and under which the city must derive its authority to require viaducts, tunnels, etc., and which must be considered in pari materia, indicate a legislative intent to authorize viaducts or bridges over and along and tunnels or underground passageways under the tracks, and not the removal of the track so as to make it go under the street or over the same. The statute nowhere contemplates or authorizes the removal of the railroad track in order to accomplish the purpose for which it was enacted. In other words, the statute clearly means that, where the tracks cross a street, the city may require either a bridge or viaduct constructed "over the tracks" or a tunnel "under the tracks," and, where the tracks extend along a street, it may require a viaduct "over the tracks"—all to the end of carrying the street over or under the tracks and letting the tracks remain as they were. Nor can the city get any comfort from the Act of 1911, p. 373, which, we may concede, but do not hold, may also apply to the ordinance in question.

While the majority are in accord as to the construction of the statute and the invalidity of the ordinances, the writer does not wish to commit himself to the constitutional question as discussed in the opinion of Justice THOMAS. It may be sound, but I do not think it at all necessary to a decision of this case. In fact, the constitutional question is only raised as against the statute in case it was so construed as to authorize the ordi-

nances, and no constitutional point is made against it as presently construed, and I am opposed to committing this court to the constitutionality vel non of an imaginary statute; that is, one which the Legislature may never pass. "Sufficient unto the day is the evil thereof."

Reversed and remanded.

ANDERSON, C. J., and SAYRE, SOMERVILLE, MILLER, and BOULDIN, JJ., concur.

THOMAS, J., dissents.

GARDNER, J., not sitting.

On Rehearing.

THOMAS, J. This court takes judicial knowledge of its records in the same controversy, and looks from one record to the other when necessary (N., C. & St. L. R. Co. v. Crosby, 194 Ala. 338; 70 So. 7); and we have so treated the record or pleadings and evidence on appeal and mandamus (Ex parte Tower Mfg. Co., 103 Ala. 415, 15 So. 836; Brady v. Brady, 144 Ala. 414, 39 So. 237; Ex parte Jackson, 212 Ala. 496, 103 So. 558; A. E. Jackson, Supt. of Banks, v. Chemical Nat. Bank, 215 Ala. 538, 112 So. 105).

It should be stated that the two cases (6 Division Nos. 522 and 523) were argued, submitted, and assigned as one, and in effect have been treated as consolidated. We were invoked to this on argument that the merits of the controversy be determined. It was further made apparent by the argument that it was the desire of both parties that the respective merits of the controversy be decided, rather than have the appeal determined on any technical ground or question. The respective constitutional and statutory constructions contended for were fully presented. The issue was the validity vel non of three ordinances of the city in its effort and requirements of the railroad companies, declared and required by that municipality necessary in the elimination of dangerous grade crossings within the city. And the majority of this court, on the issue as presented to them by the writer, held that the city was without express authority to so ordain as was done and the decision was against the city on the statute.

Considering the cases together (6 Division Nos. 522, 523), it was the right and duty of this court to treat the proceeding as one, to determine the validity of the ordinances, whether enacted (1) "by the governing body of said city in the exercise of its *police power as expressly delegated to it* by the Legislature" (section 2070, Code of 1923); or (2) "by authority of an *express* legislative grant to the city of power to ordain to the particular effect set forth in said ordinances" (Gen. Acts 1915, p. 296, § 6). The insistence of the city is that the effect of the last-stated act was not developed in the opinion, and to which we should now advert. The authority of the city to pass the ordinances, being treated as resting upon the express declaration of the mode of the exercise of police power to the end in view, and as stated in section 2070 et seq., Code of 1923. In response to the argument of the city, we may say that we should have spoken of the police power as delegated to the municipality in Gen. Acts 1915, p. 296, § 6.

Before proceeding with a discussion of the right to ordain, as was done under the general police power, it should be said that the fact that Gen. Acts 1915, p. 296, was a law of general application, and embraced within its classification only the municipality of Birmingham, and was not given a place in the codification of general laws in 1923, did not repeal or render that statute negatory. The saving clause contained in Code 1923, § 11, is sufficient to save that statute from embarrassment, and this was again safeguarded by the provisions of the act adopting the Code. Gen. Acts 1923, p. 127, § 2. See, also, 1 Code, p. vi.

It should be noted of the legislative history of section 2070 et seq., of the Code of 1923, that the provisions of the Act of 1915 (section 6, p. 296) were the law years before the adoption of the Code of 1923; that is to say, that section 2070 of the Code of 1923 was section 1296 of the Code of 1907, and was taken from section 1 et seq. of Gen. Acts 1907, p. 736. In each of these statutes words are employed, as "shall have full power and authority to require" as to construction and maintenance of viaducts, etc., "*over, along or under their tracks at their expense*," and "or other conveniences at public crossings, and such viaducts, and their approaches *over their tracks* where the same cross or extend along public highways or streets." The only change that was made in codification of section 1 of the Act of August 13, 1907, material to note, was the addition of the word "own" in the phrase "at their expense"—reading as it does (in the Codes of 1907 and 1923) "at their own expense." The expressions "where a viaduct, bridge or tunnel *crosses over or passes under* the tracks of two or more railroad companies," and "that the governing body of the city shall have full power and authority to equitably apportion the costs among the different railroads owning the said tracks," as the same appear in section 2072, Code of 1923, are contained in section 1298 of the Code of 1907 and in section 2 of the Acts of 1907, p. 737.

Addressing our inquiry to the city's right under its general police power, as expressed or delegated by the Legislature to the municipality of Birmingham in Gen. Acts 1915, p. 296, § 6, we should observe that it was in the exercise of general police power for the removal of railway tracks from street intersection that resulted in the decision in Den-

ver & Rio Grande R. Co. v. Denver, 250 U. S. 241, 39 S. Ct. 450, 63 L. Ed. 958. In the last-cited case the several federal authorities are collected and considered at length to sustain the ordinance of removal. It will be observed that in the Denver Case the proceeding was under the general police power of the municipalities of the city and county of Denver, unembarrassed by any general statute of Colorado. The counsel for the city of Birmingham insist that its ordinances were drawn to conform to the Denver decision. However, we are bound by our statutes in the premises.

It will be noted of the Omnibus Bill that its section 6 of the Acts of 1915, pp. 296, 297, contains a general delegation or recital of power—that possessed by the city or that from time to time had been delegated thereto. They were to the effect that cities of the class indicated (1) are given or had full authority not inconsistent with organic law to carry into effect "the powers and duties conferred by law upon such cities"; (2) to provide for the safety, health, prosperity, and morals of its people, etc.; (3) to prevent and punish offenses to the public; (4) to prevent conflict and ill feeling between the races by passing segregation ordinances; (5) to prevent and punish violations of its ordinances and to compel obedience thereto. The limitations or explanations of the powers thus recited or conferred are stated as follows:

"That this section shall not be construed to authorize the forfeiture of franchises granted by State laws or city ordinances without appropriate legal proceedings, and to the ends set out in this section the full, complete and unlimited police powers possessed by the State of Alabama are hereby delegated to such cities and towns as though specifically and in detail set out in this section, in so far as it is possible for the Legislature of Alabama under the Constitution of Alabama and of the United States to delegate such powers, it being expressly declared that nothing contained *therein* shall be construed as a limitation of or restriction on the police powers *heretofore* or herein granted to such cities under general or special laws."

It would appear that the use of the word "therein" in the foregoing excerpt from section 6 of the Act of 1915 referred to the laws conferring general "powers" upon and that defining the "duties" of cities of the class thus created, and laws and ordinances granted touching forfeitures of franchises. The words "heretofore or herein granted," as employed in the context, had the meaning and legal effect of a cumulative recital of police powers by that municipality. This is evident from the concluding clause of the Omnibus Bill, which is as follows:

"All laws, and parts of laws, general and special, in so far as they may be in conflict with any provision of this act, shall be and the same are hereby expressly repealed, but such cities shall continue to have and exercise all rights, authority, powers and jurisdiction which they now have except as in this act otherwise ex-pressly provided, it being the intention of this act *to grant cumulative powers to such cities.*" (Italics supplied.) Acts 1915, p. 307, § 38.

What, therefore, was the expressed legislative purpose, as affecting the city of Birmingham, by the readoption of the provisions of section 1296 et seq., Code of 1907, as thereafter affected by the act of 1915, as section 2070 et seq., of the Code of 1923? Were the provisions of section 6 of Acts of 1915, pp. 296, 297, in full force and effect as to Birmingham and other cities that may come within the class created?

The general rule of construction of two or more statutes on a subject is that they be considered in pari materia. It is a general rule of statutory construction, and given expression in Birmingham v. So. Express Co., 164 Ala. 529, 51 So. 159, that laws considered in pari materia be looked to as to all of the respective provisions thereof, in order that a right ascertainment of the meaning and intent of each be had; that special provisions relating to specific subjects control general provisions relating to general subjects, and the things specially treated be considered as exceptions to the general provisions. See, also, Herring v. Griffin, 211 Ala. 225, 100 So. 202; Pepper v. Horn, 197 Ala. 395, 73 So. 46; Montgomery v. B. L. Ass'n, 108 Ala. 336, 18 So. 816; Ex parte Mayor and Aldermen, 90 Ala. 516, 7 So. 779; 36 Cyc. 1151, 1152; R. C. L. § 108, p. 800; Dillon on Municipal Cor. vol. 5 (5th Ed.) § 586, p. 921. In the opinion of the writer the ordinances of the city of Birmingham are in accord with the delegated police power of the state (delegated by the many terms of the act as fully as possessed by the state) were warranted in the exercise under the provisions of the Omnibus Bill.

The first ground of demurrer by the city challenged the petition or bill, saying "that the same is without equity." The announced conclusion of the trial court was that demurrer to said pleading as a whole was not well taken and the bill contained equity. It was necessary that we consider this feature of the controversy to determine one phase of the city's appeal. The judgment of the majority was that the express legislative grant was not sufficient to the end declared by said ordinances. If the police power of the city under general law, or that delegated by the terms of section 6 of the Act of 1915, was limited by the express provisions of section 2070 of the Code of 1923, as to the mode of exercise to be employed and given expression in the ordinance, this is conclusive of the city's appeal on that phase of the controversy. The assignment of error to the effect that the demurrer to the bill as a whole should have been sustained is contrary to the conclusion announced by the majority in the construction of the express terms of section 2075 of the Code, and also as to the powers contained in Acts 1915, p. 296, § 6.

The assignment of error rested on the *overruling* of the demurrer to the aspect of the original petition seeking relief upon the grounds designated as F of section 30, as follows: " * * * nevertheless said ordinances are invalid in that they are unreasonable and oppressive, and their effect is to take your petitioner's property without due process of law in violation of both the state and federal Constitution," was, in the opinion of the writer, subject to the appropriate demurrer directed thereto; and the paragraph G of section 30, to the aspect of the bill that "said ordinances are unreasonable and oppressive, in that (as specified) there is no public necessity requiring *such separation or elimination*," in the judgment of the writer, was likewise subject to the appropriate ground of demurrer directed thereto.

It follows that, from the construction given of the express statute, section 2070 et seq., Code, and of the general police powers of the municipality, they are not sufficient in the opinion of the majority to the expressed purpose and specifications of the ordinances, and that the ordinances are invalid and properly enjoined in the execution. The order heretofore made was inadvertent, and not in accord with the view of the majority, and the judgment of the circuit court is affirmed. The rehearing is granted, and judgment of affirmance now entered, in case No. 522, on the ground stated—that the ordinance is invalid and not authorized by, the statutes.

In the appeal by the Louisville & Nashville Railroad Company, the bill in equity is in like terms and effect; the pleas duly set up the pendency of the first suit and its like effect under the special statutory provision. There were no demurrers interposed. Though the two cases were submitted together as one suit, they are in fact different, being only the ruling on pleas in the latter, No. 523.

The rehearing is granted, and the decree of the court is affirmed.

ANDERSON, C. J., and SAYRE, SOMERVILLE, and BOULDIN, JJ., concur.
GARDNER and BROWN, JJ., not sitting.
THOMAS, J., dissents.